**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CAROLYN GARDNER**                                  :

    Plaintiff                                      :       CIVIL ACTION
                                                    :
                                                    :       NO. 22-1034
            v.                                 :

**KUTZTOWN UNIVERSITY**, *et al.*                  :

**JOINT STATEMENT OF UNDISPUTED FACTS**

In accordance with the Court's procedures regarding summary judgment, the parties have conferred and for the purposes of summary judgment stipulate to the following facts. The inclusion of a particular fact does not mean that the parties agree that the fact is relevant to summary judgment.

**A.  The Defendants**

**JSUF 1:** Kutztown University is one of the 14 universities in the Pennsylvania State System of Higher Education (PASSHE) with administrative offices at 15200 Kutztown Rd., Kutztown, PA. **Complaint & Answer** (**Docs. 1 & 6**), ¶5.

**JSUF 2:** KU is a program or activity that receives federal funds, and a covered employer under Section 504. 29 U.S.C. §794 (b)(2). **Docs. 1 & 6**, ¶ 6.

**JSUF 3:** Defendant Kenneth S. Hawkinson has been KU's President since 2015. **Docs. 1 & 6**, ¶7.

**JSUF 4:** Defendant Jesus Peña is KU's Vice President for Equity, Compliance, & Liason for Legal Affairs. **Docs. 1 & 6**, ¶8.

**JSUF 5:** Jennifer Weidman is KU's Director of Human Resources. **Docs. 1 & 6, ¶9.**

### B. THE PLAINTIFF

#### a. Background

**JSUF 6:** Professor Gardner came to KU as an Associate Professor in 2006 and was granted tenure in 2011. **Docs. 1 & 11**, **¶14.**

**JSUF 7:** Professor Gardner attended graduate school at the New Mexico State University, where she earned a Master's Degree in Business Administration (MBA) in 1994, and then in 2002, a Doctor of Philosophy (Ph.D.) in Business Administration with a concentration in Management. **Docs. 1 & 6, ¶15.**

**JSUF 8:** Prior to coming to Kutztown, Dr. Gardner served as Assistant Professor in the College of Business and Economics at Radford University in Radford, VA. **Docs. 1 & 6, ¶16.**

**JSUF 9:** During her years at KU, Dr. Gardner has taught a range of management courses. **Docs. 1 & 6, ¶ 17; Exh. 79 at 38; Exh. 69 at 13**.

**JSUF 10**: According to materials published on KU's website, distance education is a "critical component to its mission to lead the University into the future." **Docs. 1 & 6, 19.**

**JSUF 11:** KU has a dedicated team of instructional designers, media producers, and technical support staff that collaborates with faculty "to ensure that the online experience reflects the rigorous education for which KU is known." **Docs. 1 & 6, ¶20**:

**JSUF 12:** Dr. Gardner completed KU's advanced online certification program in 2013. **App. Vol. VI at 149;** *C.f.***, App. Vol. 7 at 176.**

**JSUF 13:** Between the fall 2006 semester and the conclusion of the 2020 fall semester, Dr. Gardner taught 38 classes online. **App. Vol. VI at 150-156**.

**b. Plaintiff's Disability**

**JSUF 14:** For purposes of summary judgment, Defendants do not dispute that Dr. Gardner has a disability as defined by Section 504. **Exh. 74 at 95; Exh. 72 at 60.**

**JSUF 15:** On December 17, 2020, Dr. Rajiv Shah diagnosed Professor Gardner with Peripheral focal chorioretinal inflammation and panuveitis of both eyes, an auto-immune condition for which there is no cure. **Exh. 58; Exh. 82 at 10; 17; Exh. 69 at 46; 56.**

**JSUF 16:** Dr. Shah is a specialist in inflammatory eye diseases and immunology in the Department of Diseases and Surgery of the Retina and Vitreous and Uveitis and Ocular Immunology at Wake Forest Baptist/Atrium Health Medical Center. He also serves as Assistant Professor of Ophthalmology at Wake Forest University School of Medicine. **Exh. 82 at 8-10, 18.**

**JSUF 17:** Dr. Shah's medical records say that he explained to Professor Gardner that her disease was vision-threatening and potentially blinding.

**C. SPRING 2020: THE PANDEMIC SHUTDOWN**

**JSUF 18:** After the Governor announced a state of emergency due to the Covid-19 virus, KU, along with most other institutions of higher education (IHEs) in the state, had to discontinue all in-person instruction by March 16, 2020. **Docs. 1 & 6, ¶¶ 24.**

**JSUF 19:** In response, KU temporarily delivered courses in an online format and faculty held office hours online, and conducted faculty and committee meetings remotely. **Docs. 1 & 6, ¶ 25; App. Vol. III at 42; Exh. 70 at 129.**

**JSUF 20:** During the 2020 Spring semester, Dr. Gardner was teaching in-person sections of Gender & Diversity (MGM 318), International Management (MGM 352), and Business and

Social Environment (MGM 360); these classes were converted to remote modality when the shut-down took place.

**JSUF 21:** Dr. Gardner was also supervising Independent Study (Bus 379) and an Internship in Business (Bus 390); these classes were converted to an online modality when the shut-down took place.

### D.  2020-21 ACADEMIC YEAR

**JSUF 22**: The state of emergency in Pennsylvania remained in force until June 15, 2021. **Docs. 1 & 6, ¶ 27.**

**JSUF 23:** KU moved ahead with the reopening plan where accommodation standards were relaxed for staff and faculty resulting in approximately 67% of KU's courses being offered online. **Docs. 1 & 6, ¶29**.

**JSUF 24:** The CDC considers people with immune compromise to be at significantly elevated risk for serious illness or death from Covid-19. *See* **Docs. 1 & 6, ¶31.**

**JSUF 25:** Pursuant to the CDC's guidance, "severe illness" encompasses the need for hospitalization, intensive care, a ventilator, or may result in death. **Docs. 1 & 6, ¶30.**

**JSUF 26:** According to the CDC, people at increased risk of severe illness or death, and those who live or visit with them, need to take precautions to protect themselves from getting COVID-19. **Docs. 1 & 6, ¶32.**

**JSUF 27:** Under the Governor's order, high-risk faculty during the 2020-21 academic year were entitled to flexible work arrangements whether or not they would also qualify as people with disabilities eligible for reasonable accommodations under federal or state disability law. **Docs. 1 & 6, ¶33.**

**JSUF 28**:  Dr. Gardner requested and was granted a flexible work arrangement for the fall 2020 semester, and taught all of her courses synchronously online. **Docs. 1 & 6, ¶35.**

**JSUF 29**: Under KU's Course Design Principles and Models, synchronous online instruction takes place 100% remotely using Zoom or other video conferencing software, which allows for virtual communication between instructors, students, and colleagues in real time. **Docs. 1 & 6, ¶36; s*ee also* App. Vol. VI (No. 13); Exh. 22.**

**JSUF 30:** [Pursuant to her Flexible Leave Arrangement], Professor Gardner continued teaching her full course load synchronously online for the first half of the 2021 spring semester. **Docs. 1 & 6,  ¶40.**

 **JSUF 31**: Dr. Shah provided certification that Dr. Gardner was immune-suppressed, and needed time to adjust to the medication. On or about March 23, 2021, Professor Gardner applied for and was granted FMLA leave [ ] from March 23, 2021 through May 7, 2021 due to "incapacitating fatigue from medications." **Docs. 1 & 6, ¶42; *see also* Exh. 31 at 1-2.**

### E.  2021-22 ACADEMIC YEAR

a.    **KU's Return to Campus Mandate for the 2021 Fall Semester**

**JSUF 32:** In March, 2021, President Hawkinson issued a "Guide for Fall Semester: Covid-19 Information," stating that KU would be returning to a primarily face-to-face environment. **Docs. 1 & 6, ¶43.**

**JSUF  33:** Under the KU's published re-opening plan, classrooms would return to their pre-Covid configurations, which would not allow for social distancing. Professors could ask students to wear a mask, but could not require them to use one. Vaccinations were encouraged but not mandatory, and there was no protocol for mandatory testing that would ensure that infected students and staff not enter campus buildings and classrooms. **Docs. 1 & 6, ¶60**.

**JSUF 34:** Under Hawkinson's directive, classrooms would "closely resemble pre-Covid configurations," and employees were expected to return to work on campus, and faculty would be required to conduct office hours in person. **Docs. 1 & 11, ¶44.**

**JSUF 35:** Hawkinson's "Guide for Fall Semester" was re-published on or about August 8, 2021.

**JSUF 36:** Hawkinson's directive strongly encouraged vaccination, but did not require it. Students were encouraged, but not required, to update KU about their vaccination status. Masks would be required indoors, but there would be no social distancing requirements on-campus. **Docs. 1 & 11, ¶46.**

**JSUF 37:** In the Frequently Asked Questions ("FAQs") that accompanied the Fall Semester Covid-19 Guide, Hawkinson stated that faculty would be required to conduct office hours in-person. **Docs. 1 & 11, ¶45.**

**JSUF 38:** The language "conducting office hours is an essential function of the job of an Associate Professor" does not appear in the governing union contract. **App. Vol. VI (No. 3).**

**JSUF 39:** During a meeting in late July or early August, Defendant Peña, Vice President for KU's Division of Equity, Compliance, and Legal Affairs and Jennifer Weidman, KU's Director of Human Resources concluded that converting in-person classes to online was not a reasonable accommodation for the University.[5] **Docs. 1 & 6, ¶50.**

### F.    KU'S REASONABLE ACCOMMODATION PROCESS

**JSUF 40**: KU Policy DIV-002 governs the processing and disposition of requests for "Reasonable Accommodation for Employees." **Docs. 1 & 6, ¶73; App. Vol. VI, (No. 14).**

**JSUF 41 :** Responsibility for the implementation of KU Policy DIV-002 rests with the Director of DSO, Defendant Weidman, and Defendant Pena and designated staff members. **Docs.**

**1 & 6, ¶ 74; s*ee* App. Vol. VI (No. 15).**

**JSUF 42**: Both Weidman and the Director for DSO report directly to Jesus Peña, and he reports to President Hawkinson. **Docs. 1 & 6, ¶75.**

**JSUF 43:** As described on its website, an employee initiates KU's process for "Requesting Employee Accommodations" by submitting a request to the Director of the Disability Services Office (DSO), along with medical documentation to establish that they have a disability as defined by federal and state disability law, i.e., the Americans with Disabilities Act, Section 504 and/or the Pennsylvania Human Relations Act. **Docs. 1 & 6 , ¶70.**

**JSUF 44:** If the DSO Director concludes that the employee's medical documentation is sufficient to show a disability, she communicates this to HR Director Jennifer Weidman with a description of the requested accommodation. **Docs. 1 & 6, ¶71.**

**JSUF 45:** Although DSO determines whether an employee has a medical condition that qualifies them to move forward with the accommodation process, it does not make the decision as to whether an accommodation will be granted or denied. **Docs. 1 & 6, ¶72.**

**JSUF 46**: DIV-200 requires that all accommodation requests be evaluated on an individual basis to determine whether the provision of such accommodation would create an undue hardship to KU. **Docs. 1 & 6 , ¶76; s*ee also* App. Vol. VI  (No. 16).**

**JSUF 47:** The policy provides that if the employee has a qualifying disability and with or without reasonable accommodations, can perform the essential functions of a position, a reasonable accommodation, if available and not creating an undue hardship to KU, should be provided. **Exh. 11; Exh. 75 at 49.**

### F.   FALL 2021 FALL SEMESTER

**JSUF 48**: The first day of classes for the 2021 Fall Semester was August 30,

2021. **Docs. 1 & 6, ¶63.**

**JSUF 49:**  On August 20, 2021, Professor Gardner submitted a request for accommodation

to KU's Disabilities Service Office (DSO) seeking a synchronous remote work accommodation.

**Docs. 1 & 6, ¶64;** *see also* **Exh. 1.**

**JSUF 50**:  In support of her request, Dr. Shah submitted a letter dated August 20, 2021,

to DSO explaining that Professor Gardner requires immune-suppressive medications to reduce

the risk of vision loss, which makes her susceptible to contracting illnesses and possibly

suffering more severe symptoms of illnesses. The letter recommended that Professor Gardner

"begin/continue to work remotely for teaching, office hours, and meetings." **Docs. 1 & 6, ¶65.**

*See also* **Exh. 1 at 4-5.**

**JSUF 51:** On August 21, 2021, the Director of DSO e-mailed Ms. Weidman informing

her that Plaintiff had submitted documentation of a medical condition and had requested an

accommodation to perform all of her work remotely. **Docs. 1 & 6, ¶ 79.**

**JSUF 52:** According to KU's Human Resources website, the HR Director will work

closely with the employee's supervisor, manager, chair and/or Dean to gather the relevant

information necessary to respond to the request and assess whether a particular accommodation

will be effective, and  "may convene a meeting to continue the interactive process to discuss the

requested accommodation as well as alternative accommodations that may be effective in

meeting the requester's needs." **Exh. 25 at 6**.

**JSUF 53:** The responsibility for conducting what KU defines as the "interactive

process" is ordinarily delegated to the Employee Relations Manager, who at all relevant times

has been Alexis Martin. **App. Vol. VI (No. 17).**

JSUF 54: On August 26, 2021, Weidman denied Professor Gardner's request, stating:

_Your accommodation request (as listed/written above) for **Fall 2021** is denied, as converting your three face-to-face courses to an online modality is a fundamental alteration of the course delivery. Your request to maintain office hours and conduct/attend meetings remotely is also denied, as this is also a fundamental alteration to how these duties are conducted, and the service/product expected from our students._

_The University has a duty to students who have signed up for and expect face-to-face classes to be delivered in that modality unless and until directed by commonwealth authorities to discontinue face-to-face instruction._

**JSUF 55:** Martin did not speak with Dr. Gardner about her accommodation request. **Exh. 76 at 16.**

**JSUF 56**: Weidman did not speak with Dr. Gardner about her Request for Reasonable Accommodation form. **Exh. 74 at 16-17**.

**JSUF 57:** The Dean of the College of Business was not involved in the determination of Dr. Gardner's request for remote work in Fall of 2021, and therefore provided no objection to her request. **App. Vol. VI (No. 8).**

**JSUF 58**: The Chair of Professor Gardner's Department was not involved in the determination of [her] request for remote work in Fall 2021, and therefore provided no objection to her request. **App. Vol. VI  (No. 9).**

**JSUF 59:** Martin prepared the Resolution Form for Weidman's signature and sent it to her on August 25th for approval, noting that the request is "denied as requested." **Exh. 76 at 27; Exhs. 13 at 2 & 15 at 1.**

**JSUF 60:** Martin used the template Weidman and Peña instructed her to use on all faculty requests seeking remote work accommodations for courses that were previously scheduled to be

held in person. **App. Vol. VI (No. 20); Exh. 75 at 57; Exh. 76 at 16**; **Exh. 77 at 13; 20-21, 37, 43.**

**JSUF 61:** Martin used the same basic template to prepare denials for all the remote work accommodations for the fall semester. **App. Vol. VI (Nos. 19-20); Exh. 77 at 43; Exh. 16; App. Vol. V at 119; App. Vol. VII at 199.**

**JSUF 62:** The University has no policy calling for the denial of employee requests for reasonable disability-based accommodations on the ground that it "fundamentally alters" any of the University's course offerings, services or methods of operation or administration. **App. Vol. VI (No. 21).**

**JSUF 63:** Allowing Dr. Gardner to teach her 2021 fall semester courses online would not have entailed significant expense to the University, and was not infeasible technology-wise; neither of these reasons were cited by KU in the denial and that is not why it was denied. **Exh. 73 at 67; Exh. 74 at 22; Exh. 75 at 93; Exh. 76 at 30-31**; **Exh 79 at 16, 31-32; Exh. 80 at 22, 33.** *See also* **App. Vol. VI (No. 10).**

**JSUF 64:** New technology had been recently installed across campus which "allows [ ] for synchronous instruction for Fall 2020 and beyond." **App. Vol. IV, at 34.**

**JSUF 65:** 13 per cent of KU's course offerings for the 2021 Fall Semester were fully on-line. Another 10% were delivered at least partially online. **Exh. 33 at 7; Exh. 34 at 1.**

**JSUF 66:** For the fall semester, Professor Gardner was scheduled to teach three of her classes in-person and one online. **Docs. 1 & 11, ¶ 56.**

**JSUF 67:** Prior to the 2021 Fall Semester, she had taught Human Resources Management (MGM 335) in a remote modality 3 times.

**JSUF 68:** Dr. Gardner was scheduled to teach two sections of Business and Social Environment (MGM 210), one in-person and the other online.

**JSUF 69:** Prior to the 2021 Fall semester Professor Gardner had taught Business and Social Environment sixteen times online, and also converted two sections from in-person to online when the Covid-19 shutdown occurred in March, 2020. **App. Vol. VI at 150-53.**

**JSUF 70:     Omitted.**

**JSUF 71:     Omitted.**

**JSUF 72:** On September 10, 2021, Dr. Hawkinson issued an "Update" on Covid-19 issues after it "came to our attention that some members of our community have been planning a demonstration to protest the university's Covid-19 protocols." **Docs. 1 & 11, ¶99.**

**JSUF 73**: Hawkinson said that his reopening plan was fully within the Covid- 19 guidance from governmental authorities, including the CDC and other health experts. **Docs. 1 & 11, ¶100.**

**JSUF 74:** At that time CDC's "Guidance for "IHEs" recommended "options for accommodations, modifications, and assistance to students, faculty, and staff at increased risk for severe illness that limit their exposure to risk and allow for education and or work opportunities (such as virtual learning, telework, and modified job responsibilities, including work-related meetings and gatherings). **Docs. 1 & 11, ¶103.**

### H.     2022 SPRING SEMESTER

**JSUF 75:** Classes were scheduled to start for the 2022 spring semester on January 24, 2022. **Docs. 1 & 6, ¶104**.

**JSUF 76:** On January 5, 2022, Professor Gardner submitted a request for reasonable accommodation to DSO for the spring semester for a synchronous remote teaching schedule as

-11-

an accommodation for her disabilities, and to hold her office hours and attend meetings remotely. **Docs. 1 & 6, ¶106.**

      **JSUF 77**: This was substantively the same accommodation request that Professor Gardner made in her previous accommodation request for the Fall 2021 semester in August 2021

      **JSUF 78**: In response the DSO Interim Director McKenzie Hollenbach advised Dr. Gardner via e-mail that "the next step in the employee accommodation request process, so that we can have an interactive discussion regarding your request for accommodations.  During our meeting, I will gather information and we will discuss what would be an effective accommodation.  After our meeting I will forward your request to the Assistant Vice President for Human Resources, who is responsible for responding to that request.…Please be aware that the [DSO] does not make final determination regarding employee reasonable accommodations" **Exh. 4 at 1; Docs. 1 & 6, ¶ 107.**

      **JSUF 79:** During a  meeting with Hollenbach on January 10, 2022, Professor Gardner stated that she needed a remote teaching accommodation because her immune-suppressing medications "place her at higher risk for contracting the new variant of Covid-19." **Exh. 5 at 4.**

      **JSUF 80:** DSO had no authority to determine whether to grant Professor Gardner's request, and no one from HR attended the "interactive meeting.**" Docs. 1 & 6, ¶109.**

      **JSUF 81:** After the meeting on January 10, 2022, Hollenbach reported to Defendant Weidman in an E-mail that Dr. Gardner had submitted documentation of a medical condition and ongoing medical treatment that causes her immune system to be suppressed and makes her more susceptible to contracting illnesses." And as recommended by her medical provider, she was

-12-

"requesting to work remotely using synchronous Zoom for teaching, office hours, and meeting attendance." **Exh. 5 at 2; Exh. 74 at 26.**

**JSUF 82:**: On January 12, 2022, without meeting with Professor Gardner, Defendant Weidman denied her request on the same ground that she denied the previous one, i.e., that converting her three face to face courses to an online modality is a "fundamental alteration of the course delivery," and as would conducting office hours online. **Docs. 1 & 6 ¶110**, *See also* **Exh. 6 at 3; Exh. 74 at 49**.

**JSUF 83:**  The form also stated that as an Associate Professor, "in- person teaching is an essential function of your job." **Docs. 1 & 6, ¶111.**

**JSUF 84:** There is no policy, contractual definition, or pre-existing job description defining "full duty" for an Associate Professor, much less one stating that teaching in-person in the classroom is an essential function of the job. **Docs. 1 & 6, ¶112.**

**JSUF 85:** Allowing Dr. Gardner to teach her 2022 spring semester courses online would not have entailed significant expense to the University and was not infeasible technology-wise; neither of these reasons were cited by KU in the denial.  **Exh. 73 at 67; Exh. 74 at 22; Exh. 75 at 93; Exh. 76 at 30.**

**JSUF 86:  Deleted.**

**JSUF 87:**  Professor Gardner had four courses on her spring roster, one online and three in-person. **Docs. 1 & 6, ¶105.**

**JSUF 88:** Dr. Gardner was scheduled for two sections of Business and Social Environment (MGM 360), one in-person and one online. **App. Vol. VI at 156.**

**JSUF 89:** Prior to the Spring semester, she had taught Business and Social Environment eighteen times online. **App. Vol. VI at 150-56.**

**JSUF 90:** Dr. Gardner was scheduled to teach Human Resources Management (MGM 335) in-person. **App. Vol. VI at 156.**

**JSUF 91:** Prior to the Spring semester, Professor Gardner taught Human Resources Management synchronously three times during the 2020-21 academic year. **App. Vol. 6 at 150-56.**

**JSUF 92:** Dr. Gardner was scheduled to teach a Senior Seminar (MGM 380) in-person. **App. Vol. 6 at 156.**

**JSUF 93:** Prior to the Spring semester, Professor Gardner taught the Senior Management Seminar twice, both times in online modalities. **App. Vol. VI at 150-56.**

**JSUF 94:** The Dean of the College of Business was not involved in the determination of Dr. Gardner's request for a remote work accommodation for the spring 2022 semester, and therefore provided no objection to her request. **App. Vol. VI (Nos. 10-12);** *see also* **Exh. 79 at 40; 43; 78.**

**JSUF 95:** The Chair of Professor Gardner's Department was not involved in the determination of [her] request for remote work accommodation for the spring 2022 semester, and therefore provided no objection to her request. **App. Vol. VI (Nos. 10-12);** *see also* **Dep. 20 at 3; Exh. 80 at 30-31.**

**JSUF 96**: When Weidman denied Dr. Gardner's accommodation request on January 12th, she offered an "alternative accommodation" that would allow her to teach behind a plexi- glass shield and wear a face shield. **Docs. 1 & 6, ¶ 118**

**JSUF 97:** This alternative accommodation was not discussed during Dr. Gardner's January 10, 2022 meeting with Hollenbach. **Exhs. 5 at 4; 8 &42; Exh. 74 at 40**.

**JSUF 98:** On January 14, 2022, Professor Gardner rejected Weidman's alternative proposal stating that it was "not a reasonable accommodation." **Exh. 7 at 1 & 5**.

**JSUF 99:** By then, Covid cases were on the rise, but testing and vaccination and testing were still optional and classrooms had returned to pre-pandemic configurations, leaving no room for social distancing. Outside the classroom, social distancing was still not mandatory, and the modifications CDC had recommended to make HVAC systems safer for students and staff still had not been made. **Docs. 1 & 6, ¶120:**

**JSUF 100:**KU's "Quarantine, Isolation and Remote Work Protocols" for the spring semester were published on January 14th, allowing faculty who test positive to convert instruction from in-person to synchronous via Zoom for up to ten days. **Docs. 1 & 6, ¶121.**

**JSUF 101:** The same day, through her counsel, Professor Gardner attempted to resolve the spring semester accommodation dispute before classes began on January 24th, and to secure restoration of the FMLA and sick time she had been forced to use during the fall semester because her request for accommodation had been denied. **Docs. 1 & 6, ¶122.**

**JSUF 102:** On January 19, 2022 Counsel from the Pennsylvania State System of Higher Education (PASSHE) told Plaintiff's counsel that the accommodation request was properly denied. **Docs. 1 & 6, ¶123**.

**JSUF 103:** Meanwhile, in December 2021 KU asked Professor Gardner to submit a new FMLA Employee Serious Health Condition Certification. She provided this Certification, which was completed by Dr. Shah, on February 8, 2022. **Exh. 31 at 7-8**.

**JSUF 104:** Dr. Shah's Certification stated that Dr. Gardner required vision-saving immuno-suppression therapy, and her current medication caused her to be immune-compromised, and that he does not recommend in person classes given her immune compromised state. The certification further stated that he recommended that she be allowed to work remotely and that she can perform her job via remote access. *Id*.

**JSUF 105:** In an E-mail on February 21, 2022

**From:** Weidman, Jennifer
**Sent:** Monday, February 21, 2022 3:12 PM
**To:** Gardner, Carolyn <gardner@kutztown.edu>
**Cc:** Hollenbach, McKenzie <mhollenb@kutztown.edu>
**Subject:** Future accommodation requests

 Good afternoon, Dr Gardner,

 In the interest of future planning, please advise if you intend to again request accommodation for the Fall 2022 semester. If you plan to do so, please provide notice to the Disability Services Office, as well as indicating if the accommodations requested will remain the same. If there is no change to the accommodations requested, there is no need to submit a new request form at this time; only the notice is needed. Should you wish to change the accommodation requested, please submit a new request form. Again, that should be sent to the Disability Services Office at dso@kutztown.edu.

Since you just provided updated medical documentation in association with your FMLA paperwork, no updated medical is required at this time for ADA accommodation purposes, although another update will be requested again in the late summer.

 Regards,

Jennifer

**Exh. 9;** *see also* **Exh. 78 at 60-61.**

        **JSUF 106:** HR has no authority or direct involvement in academic planning. **Exh. 74 at**

**67; Exh.  76 at 41**. *See also* **Exh. 75 at 39; 147; Exh. 72 at 45**.

        **JSUF 107:** After receiving Weidman's February 21st correspondence-mail, Dr.

Gardner responded the following day stating, "Thank you for responding with the information

on my FMLA status.  As I responded last month, I am represented by Ms. Lorrie McKinley,

[counsel's e-mail], I will again request you include her on correspondence on this legal matter

until it is resolved.". **App. Vol. VII at 208.**

        **JSUF 108**:  Later that day (February 22, 2023), HR informed Dr. Gardner that her sick leave

balance was 525 hours, and she needed 423.75 to get through the semester. **App. Vol. VII at 207.**

**JSUF 109:** By way of an e-mail to both Hollenbach and Weidman, Dr. Gardner submitted a request for accommodation for the 2022 fall semester on March 31, 2022 to work remotely using "current technology to teach face-to-face classes. The class modality will not change. The students will be able to attend class in the assigned classroom and I will use Zoom or other technology to teach in the same room with the students. **Exh. 10.**

**JSUF 110**: This was substantively the same accommodation request that Professor Gardner had made in her previous two accommodation request forms: for the Fall 2021 semester in August 2021 and for the Spring 2022 in December 2021.

**JSUF 111:**  The letter from Dr. Shah was largely identical to the previous letters that had been submitted with Dr. Gardner's two previous accommodation requests.

**JSUF 112:** On April 1, 2022 Hollenbach e-mailed Gardner,

> **RE: RA under ADA for Fall 2022**
>
> Hollenbach, McKenzie <mhollenb@kutztown.edu>
> Fri 4/1/2022 12:45 PM
> To: Gardner, Carolyn <gardner@kutztown.edu>
> Good Afternoon Carolyn,
>
> Thank you for sending your Request for Reasonable Accommodations, as well as the most current letter from your doctor.
>
> I sent Jennifer Weidman from HR an email to let her know the DSO has received your request for reasonable accommodations, as well as a letter from your care provider.
>
> Sincerely,
>
> **McKenzie Hollenbach, LMSW & MPA** | Mhollenb@kutztown.edu
> Interim Director: Disability Services Office
> **Kutztown University of Pennsylvania**
> 215 Stratton Administration Building | PO Box 730 | Kutztown, PA 19530
> Phone:  610-683-4108 | Cell or Fax:  610-683-1520 | www.kutztown.edu

**Exh. 29; Exh. 78 at 40**. *See also* **Exh. 74 at 61-62; 69.**

**JSUF 113**: Deleted.

**JSUF 114:** Professor Gardner E-mailed Ms. Weidman on April 7th and April 14th

requesting a status report on her fall accommodation request; the e-mail was cc'd to

Hollenbach. **Exh. 30.**

**JSUF 115:** Ms. Weidman, who was by now aware of the lawsuit Dr. Gardner had filed, ,

did not respond to either of Dr. Gardner's E-mails.

**JSUF 116**: Deleted.

**JSUF 116a**: On April 15, 2022, Hollenbach e-mailed Dr. Gardner as follows:

**From:** Hollenbach, McKenzie <mhollenb@kutztown.edu>
**Sent:** Friday, April 15, 2022 9:52 AM
**To:** Gardner, Carolyn <gardner@kutztown.edu>
**Subject:** RA under ADA for Fall 2022: Request for Documentation

Dear Carolyn,

I'm reaching out to follow-up with you regarding your request for reasonable accommodations. After a review of the materials you provided, additional medical documentation is required to properly evaluate your request. The documentation should include the following information:

1. Onset date of the medical condition, specifically peripheral focal chorioretinal inflammation of both eyes
2. Description of current treatment methods, including name and onset date of medication causing immunosuppression
3. Description of level of immunosupression and affect on daily life activities
4. Length of time anticipated for the medical condition of peripheral focal chorioretinal inflammation
5. Length of time anticipated to be on medication causing immunosupression

Please Note: Documentation must be presented on letterhead and include the name, title, professional credentials, and signature of the healthcare professional or evaluator.

Thank you for your time and understanding.

Sincerely,

**McKenzie Hollenbach, LMSW & MPA** | Mhollenb@kutztown.edu
Interim Director: Disability Services Office
**Kutztown University of Pennsylvania**

Prior to April 15, 2022, DSO had never advised Dr. Gardner that the medical documentation she submitted from her doctor in support of her requests for accommodation were in any way insufficient. **Exh. 78 at 56.**

Dr. Gardner responded on April 25, 2022:

> **From:** Gardner, Carolyn <gardner@kutztown.edu>
> **Sent:** Monday, April 25, 2022 1:45 PM
> **To:** Hollenbach, McKenzie <mhollenb@kutztown.edu>
> **Subject:** Re: RA under ADA for Fall 2022: Request for Documentation
>
> Hello McKenzie,
> You may not be aware, although Jennifer certainly is, that I am represented by counsel in connection with KU's handling of my requests for accommodation, and my entitlement for the fall semester is one of the issues in my pending lawsuit. Obviously, any communications from KU pertaining to any of those issues have to be addressed to my attorneys. They have a lot of concerns about your 4/15 E-mail which they will be raising with KU's counsel. In the meantime, they have authorized me to provide only the attached FMLA documentation, which HR certainly has, but maybe you have not seen.
> There has never been any question about my disability, and that is not why my accommodation requests have been denied. Jennifer said in her February 22nd E-mail that it was not necessary for me to provide any further information unless my medical situation had changed, and it has
>
> not, or if my request for accommodation was somehow different, which it isn't.
> Sincerely,
>
> Carolyn

In response Hollenbach e-mailed:

> Hollenbach, McKenzie <mhollenb@kutztown.edu>
> Thu 4/28/2022 10:05 AM
> To: Gardner, Carolyn <gardner@kutztown.edu>
> Dear Carolyn,
>
> Thank you for reaching out.
>
> In response to your email, I will defer to your attorney and KU's counsel in addressing my April 15th, 2022 email.
>
> Sincerely,
>
> **McKenzie Hollenbach, LMSW & MPA** I Mhollenb@kutztown.edu
> Interim Director: Disability Services Office
> **Kutztown University of Pennsylvania**
> 215 Stratton Administration Building I PO Box 730 I Kutztown, PA 19530
> Phone:  610-683-4108 I Cell or Fax:  610-683-1520 I www.kutztown.edu

**JSUF 117:** In an E-mail on April 26, 2022 to Deputy Attorney General Kathy Le, who was then representing Kutztown in the recently filed lawsuit, Plaintiff's attorney attached the FMLA paperwork that Dr. Gardner sent to DSO the day before. **(Exh. 31).** The e-mail concluded

with the following: "Please let me know if you would like to discuss this any further.  Otherwise, please advise DSO and HR to send any further inquiries regarding her disability status through counsel." **Vol VII at 211.**

### I.   Extended Leave Without Pay

**JSUF 118:** Dr. Gardner filed for a Temporary Restraining Order (TRO) on August 17, 2022 seeking an order *pendente lite* requiring KU to provide her with a remote work accommodation for the 2022 Fall semester. **ECF Doc. 16.**

**JSUF 119:** On August 22, 2022, the Court denied the TRO on the ground that Dr. Gardner would not suffer irreparable harm absent temporary restraints and that the Dr. Gardner was seeking mandatory affirmative relief to her current conditions of employment. **ECF Doc. 22; Exh. 44;** *see also* **App. Vol. VII at 213-15.**

**JSUF 120:** As described in letter from HR Generalist Debora Longenhagen on October 3, 2022, Dr. Gardner had been  "approved" for extended Leave Without Pay (LWOP) from October 19, 2022 through July 25, 2023. However, she would "lose her right to return to [her] position" if she remained on extended LWOP after 12:00 a.m. on April 18, 2023, at which time she would also lose her entitlement to benefits.**.**

### 1.   Spring 2023 Request for Remote Work Accommodations

**JSUF 121:** On Friday, December 2nd Dr. Gardner submitted to Hollenbach a request for a remote work accommodation for the 2023 Spring semester. **Exh. 45.**

**JSUF 122**:  This was substantively the same accommodation request that Professor Gardner had made in her previous three accommodation requests for the Fall 2021 semester in August 2021, for the Spring 2022 semester in December 2021, and for the Fall 2022 semester in

March 2022.

**JSUF 123:** Dr. Gardner provided her September 13, 2022 FMLA Medical Certification signed by Dr. Shah which provided the onset date of her auto- immune condition, her current treatment with immune-suppressing medication, and his recommendation that she work remotely. **Exh. 43**.

**JSUF 124:** In a letter E-mailed on December 6, 2022 entitled "Updated Leave Information," Ms. Weidman advised Dr. Gardner that she would have limited return to work rights if her absence continued beyond 12:00 a.m. on January 24, 2023, at which time she would also lose her entitlement to State System medical or life insurance benefits. **Exh. 46 at 2; Exh. 74 at 89.**

**JSUF 125**: The letter noted she could enroll in the State System's Affordable Care Act health plan at her own expense.

**JSUF 126:** On December 15, 2022, Dr. Gardner submitted to Hollenbach an updated letter from Dr. Shah which was dated December 8, 2022, but was otherwise identical to his previous letter on January 6, 2022 setting forth her diagnosis, her treatment with immune suppressing medications for an indefinite period of time, and his recommendation that she work remotely as a "dire" precaution to protect her overall wellbeing due to her being immune-compromised. **Exh. 57**.

**JSUF 127: Deleted.**

**JSUF 128:** On December 20, 2022 Ms. Weidman wrote to Dr. Gardner and the plaintiffs in the two related cases offering an alternative accommodation in a classroom to be converted from a computer lab with a separate entrance, a cap of 35 students, additional ventilation and air exchange,

including two portable air scrubbers with both HEPA and MERV filters and bi-polar ionization unit on the heat pump used for the space, reduced foot traffic, and an ADA-compliant instructor podium, enclosed on three sides with a plexiglass shield. The deadline for accepting or rejecting the proposed alternative was the close of business on December 22nd, which was when the University was closing for the holidays until January 3, 2023. **Exh**. **48; Exh. 74 at 97-98.**

**JSUF 129:** Dr. Gardner responded to Defendant Weidman on December 22, 2022 asking for additional information about the proposed new classroom that she believed her doctor would need to evaluate the safety of the proposed alternative accommodation. **Exh**. **48 at 2**.

**JSUF 130:** On December 28, 2022, Dr. Gardner filed a second Motion for a TRO requiring KU to provide her with a remote work accommodation for the Spring Semester and/or to preclude them from terminating her work return rights and medical benefits at midnight on January 24, 2023. **ECF Doc. 34.**

**JSUF 131**: Weidman responded on January 3, 2022, and thereafter exchanged E-mails and additional information with Dr. Gardner between January 5th and 16th. **Exhs. 49-50**.

**JSUF 132:** Pursuant to a hearing on Gardner's TRO on January 12, 2023, Dr. Gardner was ordered to provide another letter from Dr. Shah specifically pertaining to whether the proposed alternative accommodation would be a safe and effective accommodation for her disability.

**JSUF 133:** On January 18, 2023, Dr. Gardner submitted a letter from Dr. Shah stating that Defendant's alternative accommodation, while helpful, was not sufficient to protect her from contracting Covid19 and its potential consequences due to her immune-suppressed condition, and reiterating his recommendation that she work remotely. **Exh. 58.**

**JSUF 134**:  On January 19, 2023, Dr. Gardner formally rejected Kutztown's alternative accommodation.

**JSUF 135:** On  January 23, 2023 the  Court entered a preliminary injunction enjoining Defendants from terminating Dr. Gardner's employment benefits and right to return as a tenured professor without further Order of the Court. The injunction expires on July 25, 2023. **ECF Doc. No. 41**.

**JSUF 136:** Because of the TRO, Dr. Gardner's current work status is extended leave without pay with benefits (medical and life insurance).

**JSUF 137**: Since the 2021 Fall semester, there has been no change to KU's policy that faculty requests to convert in-person classes to online modality would cause undue hardship on the University because of the "fundamental alteration to the service provided to students under the University's business model as an in-person institution." **App. Vol. VI (No. 28).**

**JSUF 138:** Since the 2021 Fall semester, Kutztown has never allowed an accommodation in the form of a 100% remote teaching for any fulltime faculty.

**Respectfully submitted,**

/s/ Lorrie McKinley                    /s/ Kevin Bradford/LM
**LORRIE McKINLEY, ESQUIRE**          **KEVIN BRADFORD, ESQUIRE**
Counsel for Plaintiff                  Counsel for Defendants
McKinley & Ryan, LLC                   Deputy Attorney General, Eastern Regional
                                       Office  Civil Litigation Section

238 West Miner Street                  1600 Arch Street, Suite 300,
West Chester, PA 19382                 Philadelphia, PA 19103
Tel: 610-436-6060                      Tel: 215-560-2141
lmckinley@mckinleyryan.com             kbradford@attorneygeneral.gov

DATE:  June 13, 2023