IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLYN GARDNER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-1034 |
| | : | |
| KUTZTOWN UNIVERSITY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS[1]**

Defendants hereby respond to the Plaintiff's Supplemental Statement of Undisputed Facts (ECF No. 52-1) for purposes of summary judgment as follows:

1. Admitted that for purposes of summary judgment, Defendants do not contest that Plaintiff is disabled under Section 504. Otherwise denied.

2. Admitted.

3. Admitted that based on starting in December 2020, Dr. Shah prescribed Plaintiff anti-inflammatory medications that cause her to be immune suppressed and that Dr Shah calls these drugs "chemotherapy" despite the fact that they are not medications used to treat cancer. Denied that the larger medical community or society in general considers these medications

---

[1] Despite spending several hours over several days attempting to agree to as many as the hundreds of individual proposed statements of facts Plaintiff presented to Defendants, culminating in the joint statement of facts filed by Plaintiff at ECF No. 52, Plaintiff nonetheless presents 56 additional "undisputed" facts. Many of these are the original version of a fact that the undersigned counsel worked on rewording so it could be included in the joint statement of facts, rendering the original version disputed rather than undisputed. Others are exact duplicate of a fact that appears in the joint stipulation.

1

chemotherapy. See https://my.clevelandclinic.org/health/treatments/24323-chemotherapy-drugs ("Chemotherapy drugs are medicine you receive to kill cancer cells.")

4. Admitted.

5. Admitted up to the word "condition." The remainder is denied as a conclusion of law. Admitted that for purposes of summary judgment, Defendants do not contest that Plaintiff is disabled under Section 504 or KU policy. Otherwise denied.

6. Denied as stated. While at some point immune suppressed individuals, such as Plaintiff, were broadly considered at higher risk for severe illness or death from Covid, that is no longer the case assuming the individual is current on her vaccines.

7. Admitted that Dr. Shah has recommended that Plaintiff begin/continue to work remotely for teaching, office hours, and meetings. Otherwise denied. Dep. Exh. 57

8. Admitted that as to each of the accommodation requests for her eye KU has determined Plaintiff to be disabled. Otherwise denied as stated, as the allegation is vague.

9. Denied. This is a legal conclusion contested by Defendants.

10. Admitted that during her years at KU, Dr. Gardner has taught a range of management courses. Otherwise the characterization is denied as due to the lack of time range it cannot be admitted. *See* Anne Carroll Dep. (Exh. 79) at 39-40.

11. The paragraph up to the word "2013" was already stipulated to (see JSUF 12). The remainder is denied as it is not supported by the cited evidence.

12. This fact is included in the JSUF.

12. (12b.) Denied as stated as it does not accurately characterize the cited provisions of the CBA, Article 12 of which states that the universal responsibility of the teaching FACULTY MEMBER is effective teaching and lists the Categories for Performance Review and Evaluation

as Effective teaching and fulfillment of professional responsibilities; Continuing scholarly growth and professional development; and Service: contribution to the UNIVERSITY and/or community.  It does not use the terminology "essential functions."

13.     Denied.  The cited deposition pages does not support this statement.

14.     Admitted that President Hawkinson considers one essential function of being a professor at KU is providing in-person instruction on campus and that accommodation seeking to do the job 100% remotely cannot be granted.  Otherwise denied/denied as stated as it is not a complete and/or accurate summary of the cited deposition testimony.

15.     Admitted that President Hawkinson considers one essential function of being a professor at KU providing in-person instruction on campus and that accommodations seeking to do the job 100% remotely cannot be granted.  Otherwise denied/denied as stated as it is not a complete and/or accurate summary of the cited deposition testimony.

16.     Admitted that President Hawkinson considers one essential function of being a professor at KU providing in-person instruction on campus and that accommodations seeking to do the job 100% remotely cannot be granted.  Otherwise denied/denied as stated as it is not a complete and/or accurate summary of the cited deposition testimony.

17.     Admitted that, as the cited item states, the language "conducting office hours is an essential function of the job of an Associate Professor" does not appear in the governing union contract.  Otherwise denied.

18.     Admitted that, as the cited item states, the decision to conduct office hours on campus or remotely depends on student needs and preferences.  Otherwise denied.

19.     This statement is too broad and lacking context, including dates, to simply admit. It is therefore denied. For example, an unvaccinated person in poor health, but not falling within the

category of having an impairments or disabilities that place them at higher risk for serious illness or death, may be at higher risk than a fully vaccinated person who could be considered as falling within the category of having an impairments or disabilities that place them at higher risk for serious illness or death.

20. Admitted that President Hawkinson and Ms. Weidman were aware that the CDC was recommending this to the extent possible as of Fall 2021. Otherwise denied as the CDC's guidance has changed over time and President Hawkinson's and Ms. Weidman's knowledge of that evolving guidance at any other given time is not established by the cited record. Denied entirely as to Pena as there is no cited evidence supporting his alleged knowledge of this information.

21. Denied. The cited deposition pages do not support this allegation.

22. Denied. This is a legal conclusion contested by Defendants.

23. This fact is included in the JSUF.

24. This fact is included in the JSUF.

25. This fact is included in the JSUF.

26. Admitted up to the word "2021." The remainder is denied as argumentative and contains no citation to the record.

27. N/A

28. Admitted that in January 2022 KU offered an alternative accommodation of a plexiglass barrier and a face shield which Plaintiff rejected. Otherwise denied/denied as stated as the sentence does not make sense.

29. Denied. There is no citation to the record supporting this allegation.

30. Denied. There is no citation to the record supporting this allegation.

31. Admitted that it was Gary Chao and Jennifer Weidman's understanding that that Plaintiff's classes had yet to be reassigned. Otherwise denied, including what anyone else's understanding of the situation was as such an allegation is not supported by the cited evidence.

32. Denied.  The allegation is argumentative ("dismissing") and what appears to be "Exh 65" - ECF No. 47-12 – does not support this allegation.

33. Admitted up to the word "class."  The remainder is denied as argumentative and contains no citation to the record.

34. Admitted.

35. Admitted.

36. Admitted with the understanding that vacations or other circumstances could affect that timeline.

37. The described and cited e-mail is protected by attorney-client privilege, was obviously inadvertently produced and should not be considered admissible evidence in this matter.

38. Admitted that Ms. Weidman, who was considering Plaintiff's accommodation request, directed Ms. Hollenbach to ask Plaintiff for more information related to her condition. Otherwise denied as it is unknown what meeting the allegation references.

39. Admitted with the understanding that Ms. Weidman can direct DSO to obtain additional information from the employee that may relevant to the accommodation decision before it, including current medical information.

40. Admitted that on April 15, 2022 Ms. Hollenbach e-mailed Plaintiff asking for information regarding her current medical status.  Otherwise denied.  The entire e-mail is located at JSUF 116a, making this allegation unnecessary.

41.     Admitted that DSO had never told Plaintiff her medical documentation was inadequate. Otherwise denied.

42.     Denied.  This is argumentative and misleading.  The determination that the condition is a disability does not preclude staff involved in deciding whether to grant or deny the accommodation, or propose and alternative accommodation, from obtaining additional or updated information and obtaining that information through the DSO.

43.     Admitted.

44.     Admitted that on April 25, 2022 Plaintiff e-mailed Ms. Hollenbach.  Otherwise denied as this is not an accurate summary of this email. The entire e-mail is located at JSUF 116a, making this allegation unnecessary.

45.     Denied.  The request sought updated information.

46.     Denied.  The parties previously agreed to the characterization of the e-mail in JSUF 117. To eliminate any confusion, the e-mail itself has been added to the record and for ease of reference is reproduced here:

**Lorrie McKinley**

**From:** Lorrie McKinley
**Sent:** Tuesday, April 26, 2022 1:27 PM
**To:** Le, Kathy
**Cc:** Ralph Lamar; Carolyn Gardner
**Subject:** Carolyn Gardner and DSO 415/2022 E-mail
**Attachments:** 4-25-Email to McKenzie.pdf; 2-21 Weidman.Gardner.E-mail.pdf; FMLA.03.21.21.pdf; FMLA.Fall.2021.Form and Doctor Certification.pdf; FMLA.Spring 2022.Form and Doctor Certification.pdf

Kathy, I am making you aware of the attached E-mail sent by DSO to Carolyn Gardner on 4/15, as I presume you do not know about it, and did not authorize it. The E-mail is alarming for a number of reasons, both procedural and substantive. For one thing, Dr. Gardner's ongoing entitlement to an accommodation for the upcoming 2022 fall semester is an issue in her lawsuit, and neither HR nor DSO should be communicating with her about that except through counsel. Dr. Gardner has repeatedly made that point to Ms. Weidman, who is a named defendant. Furthermore, when Ms. Weidman asked Dr. Gardner to provide notice as to whether she would be requesting an RA for the fall semester (purportedly for purposes of "planning," although HR has nothing to do with academic planning), she specifically said that it was not necessary for her to provide any additional medical information because she had so recently done so in connection with her FMLA request.

That being the case, both the timing and the scope of the E-mail are concerning. We know from the depositions of Alexis Martin and Jennifer Weidman that only after DSO makes the eligibility determination does it transmit the RA request to HR. Here, that happened weeks before the 4/15 E-mail, so it is not just out of the ordinary, but looks far more like a discovery request related to Dr. Gardner's lawsuit than a legitimate medical inquiry related to her RA request, which DSO already has, and which HR has already conceded to be sufficient. DSO has never needed more medical documentation than that to conclude that Dr. Gardner has a qualifying disability.

I have instructed Dr. Gardner to send the limited response you will find in the first attachment, along with her FMLA paperwork, which answers most of the questions posed in the E-mail, and provides more information than either DSO or HR need for purposes of processing her fall RA request. For instance, neither the onset date of her immune-compromise/suppression or the probable duration of her condition are relevant to that request, but HR knows that she was diagnosed in December, 2020, and will be taking immune-suppressing drugs for the foreseeable future because there is no cure for her condition, and without them, she is likely to lose her sight.

DSO has no need to know about Dr. Gardner's "current treatment methods" or the names of her medications, and I have instructed her not to provide that information. The same is true for how her "daily life activities" are affected by her immune-suppression, which is irrelevant, and shows a lack of understanding about the nature of her entitlement. Dr. Gardner has a qualifying disability because her immune system, a major bodily function, is highly compromised, something that is more than adequately supported by the existing medical documentation. 42 U.S.C. §12102 (2). She is entitled to statutory coverage on that basis alone. Additionally, *and separately*, she is substantially restricted in the location and manner in which she can safely conduct work and personal activities and interact with others outside her own home, among other things, because of her significantly elevated risk for serious illness or death if she contracts Covid-19. Moreover, her vision impairment substantially impacts the major life activity of "seeing," and is independently qualifying either by itself and/or because of the immune-suppressing drugs she must use to mitigate it (which leads us back to the substantial impact on the immune system).

CG-113

> If the Defendants decide to challenge Dr. Gardner's disability status in the litigation, that is their right, although we think it will be a waste of everyone's time. Meanwhile, the current medical evidence more than adequately documents that she has a disability under the law, something neither DSO nor HR have never challenged, nor is that why her requests for accommodation have so far been denied.
>
> Please let me know if you would like to discuss this any further. Otherwise, please advise DSO and HR to send any further inquiries regarding Dr. Gardner's disability status through counsel.
>
> Lorrie
>
> ---
> *Lorrie McKinley*
> Lorrie McKinley, Esquire
> McKinley & Ryan, LLC
> 238 West Miner Street
> West Chester, PA  19382
> (610) 436-6060
> Fax: (610) 436-6804

47. Denied. The cited evidence is simply a letter written by Attorney McKinley saying she never received a response to the e-mail. Moreover this allegation implies that this hostile e-mail requested a response, which is not correct (see above), that Attorney McKinley was incapable of initiating further communications with Ms. Le until she responded to the e-mail, which is not true, or that there were no other communications between Attorney McKinley and Ms. Le, which is unknown to current counsel.

48. Admitted that in accordance with the Plaintiff and her attorney's wishes, communications with Plaintiff about the Fall 2022 accommodation ceased and that Plaintiff did not initiate any communications with KU regarding her Fall 2022 accommodations. Otherwise denied/denied as stated.

49. Admitted that in accordance with the Plaintiff and her attorney's wishes, communications with Plaintiff about the Fall 2022 accommodation ceased and that Plaintiff did not initiate any communications with KU regarding her Fall 2022 accommodations. Otherwise denied/denied as stated.

50.     Admitted that at no point between Ms. Weidman's February 22, 2022 e-mail asking about Plaintiff's plan for Fall 2022 and April 26, 2022 when Plaintiff and her attorney demanded that all discussions regarding of Fall 2022 go through counsel did Ms. Weidman speak with anyone about the specific classes and modality of those classes that Plaintiff may be teaching in the Fall 2022.  Otherwise denied as the cited evidence does not support the additional statements in this paragraph.

51.     Admitted that Plaintiff used her remaining paid leave.  The remainder is denied as argumentative, incorrect, and not supported by the cited evidence.

52.     Admitted.

53.     Admitted that Plaintiff's April 25, 2022 e-mail to Ms. Hollenbach telling her that communications regarding her Fall 2022 accommodation attached an FMLA form containing some of that information.  Denied to the extent that it the allegation implies that the cited evidence that Ms. Hollenbach viewed the form in April or recalled that Plaintiff had sent it when she was e-mailing Plaintiff on December 16, 2022 in response to Plaintiff's Spring 2023 accommodation request.

54.     Admitted that for the Fall 2021 DSO determined Plaintiff was disabled based on Dr. Shah's letter and the current state of COVID.  Otherwise denied, as the Spring 2022 determination included a meeting with DSO.

55.     Denied.  This allegation is misleading in that it describes and cites only the initial e-mail and does not describe or include the complete conversation, where Plaintiff's counsel flatly rejects this suggestion course of action for Fall 2023 and claims it is "further evidence of intentional discrimination and retaliation."  The complete communication is being provided with Defendant's exhibits (D-9) and speaks for itself.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: August 11, 2023          By:   /s/ Matthew Skolnik
                                      Matthew Skolnik
OFFICE OF ATTORNEY GENERAL            Senior Deputy Attorney General
1600 Arch Street, Suite 300           Attorney ID No. 89423
Philadelphia, PA 19103
Phone: (215) 560-2136                 Kevin Bradford
Fax:   (717) 772-4526                 Senior Deputy Attorney General
mskolnik@attorneygeneral.gov
kbradford@attorneygeneral.gov         Karen M. Romano
                                      Chief Deputy Attorney General
                                      Civil Litigation Section

                                      *Counsel for Defendants*

### CERTIFICATE OF SERVICE

I, Matthew Skolnik, hereby certify that the foregoing Defendants' Response to Plaintiff's Supplemental Statement of Facts is available for viewing and downloading from the Court's Electronic Case Filing system by all counsel of record.

Date: August 11, 2023          By:   /s/ Matthew Skolnik
                                      Matthew Skolnik
                                      Senior Deputy Attorney General