IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLYN GARDNER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-1034 |
| | : | |
| KUTZTOWN UNIVERSITY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS[1]
IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

1. Defendant Kutztown University ("KU"), is situated on a 289-acre campus in the borough of Kutztown, PA. The University's GreenStar award-winning campus comprises diverse facilities offering significant opportunities for in-person learning, collaborating and exploring, including modern labs, studios, and living-learning communities.
https://www.kutztown.edu/about-ku/our-campus.html

2. In the competitive field of higher education, the University distinguishes itself by providing an intimate university experience with an average class size of twenty-four students and student-to-faculty ratio of 17:1. https://www.kutztown.edu/about-ku/fast-facts.html

---

[1] The Defendants Statement of Additional Undisputed Facts ("DSUF") contain facts that the parties did not agree to, whether due to disputes about the particular language or because their need was not known at the time Plaintiff filed the Joint Statement of Undisputed Facts. While these DSUFs cite Plaintiff's exhibits (referred to as P-1, P-2, etc.) where possible and practicable, they also rely on additional exhibits filed with this document (referred to as D-1, D-2, etc.), which are necessary because they could not be located within Plaintiff's voluminous exhibits or the version included therein is incomplete or unclear.

3. The vast majority of Kutztown's course offerings are traditional, face-to-face classes that allow students to interact with faculty and fellow students in a smaller class than at other larger universities and have unplanned interactions outside of class. Hawkinson Dep. (Exh. P-70) at 47:4-15, 50:14-21, 54:4-13.

4. Under the terms of the Collective Bargaining Agreement, as of the Fall 2021 semester, faculty members receive an additional $15 per student who attends the faculty member's class via remote means.  Exh. D-11 (CBA pp. 128-29).

5. KU President Dr. Kenneth Hawkinson's plan for reopening campus in Fall 2020 adopted recommendations from the Pennsylvania Department of Health, the Centers of Disease Control and Prevention ("CDC"), and the Pennsylvania Department of Education to enable the campus to reopen its campus with modifications.

6. The Families First Coronavirus Response Act, was in effect from March 18, 2020 until December 31, 2020 and required employers to offer expanded access to flexible work arrangements due to the continuing COVID-19 pandemic.  85 Federal Register (FR) 19326, 19328 (§ III A) (April 6, 2020).

7. During the 2020-2021 school year, KU granted requests from over 200 hundred faculty members to teach remotely. Hawkinson Dep. (Exh. P-70) at 39:16-23.

8. As a result, approximately 85% of classes during the 2020-2021 school year were conducted fully online. Hawkinson Dep. (Exh. P-70) at 38:4-6.

9. During the 2020-2021 school year, 2,000 students withdrew from KU housing. Hawkinson Dep. (Exh. P-70) at 38:4-6, 39:16-23.

10. Prior to the onset of COVID-19 in March 2020, Kutztown's distance learning comprised a tiny percent of its curriculum, in the neighborhood of six percent. Hawkinson Dep. (Exh. P-70)

at 45:6-24.

11.     Kutztown has never hired a full-time faculty member to teach exclusively online. Hawkinson Dep. (Exh. P-70) at 26:15-24.

12.     Aside from 2020, no KU faculty member has ever taught exclusively online in a given semester. Hawkinson Dep. (Exh. P-70) at 85:5-7.

13.     The Collective Bargaining Agreement, under Article 4 "Duties and Responsibilities of Faculty Members," states that faculty members' duties and responsibilities include keeping office hours.  Exh. D-11, p. 2.

14.     President Hawkinson, who is a communications professor, strongly believes that faculty presence and participation on campus—both in and out of the classroom—are critical to its pedagogical model of fostering robust engagement between and among students and faculty. Hawkinson Dep. (Exh. P-70) at 56:24-57:14; 112:22-115:4.

15.     There is research (and articles based on that research) finding that in-person instruction is more effective that remote instruction; President Hawkinson strongly agrees with these findings. Hawkinson Dep. (Exh. P-70) at 66:12-18, 98:8-11, 98:23-98:1; Exh. D-1: "Remote students are more stressed than their peers in the classroom, study shows." Erin Einhorn, *NBC News*; Exh. D-2 "Equity in online learning" Tamara Tate & Mark Warschauer, *Educational Psychologist*; Vol. 57, Issue 3, pp 192-206; Exh. D-3 "Problems in Online Classes" Jake Shore, *Seattle Post-Intelligencer*.

## PLAINTIFF

16.     Plaintiff is a full-time, tenured faculty member in the Business Administration Department – a department that does not offer any online-only degrees.

17. Prior to the COVID-19 pandemic, Plaintiff taught her classes predominately in-person; she had never taught more than one class online per semester. Carroll Dep. (Exh. P-79) at 16:20-17:21, 28:22-29:13.

18. Every class taught by Plaintiff online was also taught by her in-person at another time in the school year; none was ever offered by the school as a solely online class.

19. Plaintiff's online classes generated more negative student feedback than her in-person classes. Carroll Dep. (Exh. P-79) at 88:9-92:25.

20. As of 2019, Plaintiff has been on "interim review" status due to her lack of scholarly activity. Pl. Dep. (Exh. P-69) at 182:21-184:7.

## 2021-22 REOPENING PLAN

21. In April of 2021, with the expiration of the Families First Coronavirus Response Act and the expansion of access to the COVID-19 vaccine, Kutztown announced that all staff and faculty would soon return to work in-person. ECF No. 1 (Complaint) and ECF No. 6 (Answer), ¶ 43; Exh. P-36.

22. Under the reopening plan, staff were required to return in July and faculty were to return to in-person instruction in August for the Fall 2021 semester. Exh. P-36.

23. The reopening plan largely continued KU's COVID-19 mitigation measures set in place the prior school year, which included, *inter alia*, HVAC systems modified based on CDC recommendations; Plexiglass available for classrooms; and personal protective equipment, including KN95 masks, made available for students and employees. Exh. P-36.

## PLAINTIFF'S MEDICAL STATUS AND STATE OF COVID

24. In late 2020, Plaintiff and her husband moved from Pennsylvania to Greensboro, North Carolina and began residing full-time there. Pl. Dep. (Exh. P-69) at 51:11-16, 76:12-77:6.

25. They moved to Greensboro because her husband got a job at a nearby community college, where he teaches in person, interacting with numerous students and staff members each day. Pl. Dep. (Exh. P-69) at 77:7-16.

26. Plaintiff continues to live in North Carolina and has not maintained a residence in Pennsylvania since she moved there in 2020.  Pl. Dep. (Exh. P-69) at 77:22-78:3.

27. In December 2020, Plaintiff began seeking treatment with Dr. Shah, an Ophthalmologist in Greensboro, North Carolina. Shah Dep. (Exh. P-82) at 17:2-3.

28. In December 2020, Dr. Shah diagnosed Plaintiff as having peripheral focal chorioretinal inflammation ("CRI") and started her on anti-inflammatory medication; she has been taking Humira since June 2021.  Shah Dep. (Exh. P-82) at 17:4-17, 18:12-20:16

29. On August 20, 2021, Dr. Shah wrote a letter at Plaintiff's request stating that "due to the new, and more contagious, variant of COVID 19, the Delta variant," he recommended "she begin/continue to work remotely for teaching, office hours, and meetings."  Exh. P-55 (CG-1)

30. On January 6, 2022, Dr. Shah wrote a letter at Plaintiff's request stating that "due to the new, and more contagious, variant COVID 19, Omicron Delta variant," he recommended "she begin/continue to work remotely for teaching, office hours, and meetings."  Exh. P-56 (DEF-CG-00018).

31. On December 8, 2022, Dr. Shah wrote a letter at Plaintiff's request stating that "due to the new, and more contagious, variant COVID 19, Omicron. Delta Variant," he recommended "she begin/continue to work remotely for teaching, office hours, and meetings."  Exh. P-57.

32. By December 2022 neither the Delta nor the Omicron were new or dominant strains of the virus.

33.     On May 11, 2023 the federal government lifted the COVID Public Health Emergency. Exh. D-4: CDC end of COVID emergency declaration (May 5, 2023).

34.     Experts now consider COVID an ordinary illness; for most immunocompromised people who are up to date on their vaccines, contracting COVID rarely requires hospitalization.  Exh. D-5: "A Positive Covid Milestone" David Leonhardt *The New York Times*.

35.     However, Dr. Shah continues to maintain that it is not safe for Plaintiff to teach in-person, even in the special classroom offered by KU (described in the JSUP and in further detail below).

36.     Dr. Shah will continue to recommend that Plaintiff not teach in-person, even in the special classroom, until Covid infection rates reach something close to infection rates for Polio (which has been essentially eradicated from this country).  Shah Dep. (Exh. P-82) at 56:6-17.

37.     Before writing any of his letters, Dr. Shah, who lives and practices medicine in North Carolina, did not consider infection or vaccination rates in Berks County, PA, where KU is located. Shah Dep. (Exh. P-82) at 36:2-13, 51:21-52:4, 75:15-22.

## FALL 2021 SEMESTER

38.     On August 19, 2021, two days before Plaintiff contacted the DSO with her formal accommodation request (on August 21, 2021), Plaintiff called Jennifer Weidman and they spoke for about 30 minutes; the discussion included the topics of teaching classes remotely for the Fall 2021 semester and using leave for that semester.  Weidman Dep. (Exh. P-74) at 6:21-8:6, 12:11-13:14.

39.     Jennifer Weidman did not personally communicate with Plaintiff after she submitted the formal request to the DSO and before it was denied on August 25, 2021.  Weidman Dep. (Exh. P-74) at 16:21-17:3.

40. At some point in August 2021 Jennifer Weidman spoke with Plaintiff's Dean about the accommodation Plaintiff had requested, either generally or specific to Plaintiff. Weidman Dep. (Exh. P-74) at 19:25-20:23.

## SPRING 2022/FALL 2022 SEMESTERS

41. On January 14, 2022 Plaintiff rejected alternative accommodation of the plexi-glass shield and face shield for the Spring 2022 semester stating on the form:



> This is not a reasonable accommodation. My request for a synchronous teaching assignment is reasonable, feasible, and would impose no significant difficulty, expense, or hardship on the University.

Exh. P-7 pp. 1-5.

42. Plaintiff never offered any counter proposal to this alternative accommodation, such as additional protections.

43. Ms. Weidman, nonetheless on her own, on January 19, 2022 offered the following additional protection:

**From:** Weidman, Jennifer <weidman@kutztown.edu>
**Sent:** Wednesday, January 19, 2022 2:51 PM
**To:** Gardner, Carolyn <gardner@kutztown.edu>; Martin, Alexis <amartin@kutztown.edu>
**Subject:** RE: ADA Resolution Form - Carolyn Gardner - Spring 2022.pdf

Hello Carolyn,

In addition to the alternative accommodations listed on the resolution form dated 1/12/22, I also wanted to add another option, available alone or in conjunction to the previously offered face shield and standing plexiglass shield. Your in-person classes for the spring semester could be relocated to a larger classroom allowing you to be spaced further away from your students.

As I am away from the office, I don't have access to be able to update the original resolution form with this additional alternative. Please consider this email as if it were a revised alternative accommodation form and let us know if you accept or reject any or all of these alternative accommodations offered.

Regards,
Jennifer

Exh. D-6.

7

44. In response, Plaintiff stated:

> Gardner, Carolyn <gardner@kutztown.edu>
> Thu 1/20/2022 10:45 AM
> To: Weidman, Jennifer <weidman@kutztown.edu>
>
> Hello Jennifer,
> Thank you for the email.
> You may not know that I am represented by legal counsel in this situation and she, Lorrie McKinley, has been communicating with the legal department at PASSHE.
>
> I am guessing that all correspondence about this ADA matter should go through Ms. McKinley or PASSHE legal.
>
> Thank you,
> Carolyn

Exh. D-6.

45. Meanwhile, on the same day Plaintiff formally rejected KU's alternative accommodation (January 14, 2022), Plaintiff's attorney, Lorrie McKinley, sent counsel for KU a four-page letter announcing her representation of Plaintiff, calling the alternative accommodation inadequate, demanding that Plaintiff's initial request of 100% remote teaching must be granted by law and that failure to do so would result in a lawsuit.

Exh. D-7.

46. Counsel for KU promptly responded to attorney McKinley and further communications ensued. Exs. P-52, P-53.

47. In none of these communications, did attorney McKinley suggest any other alternative accommodations, or additional protections. Exs. P-52, P-53.

48. On March 17, 2022, Professor Gardner filed this lawsuit. ECF. No. 1.

49. On March 31, 2022, despite having informed Ms. Weidman that all correspondence regarding her accommodations should include her attorney (JSUF 107), and the lawsuit having just been filed, Plaintiff e-mailed both Ms. Weidman and Ms. Hollenbach (beginning with "Dear

8

McKenzie and Jennifer") regarding a remote teaching accommodation for the Fall 2022 semester; that communication did not include her attorney. Exh. P-29.

50.     Ms. Hollenbach, who was the DSO director, and the initial point of communication for accommodation requests, did respond to this e-mail on April 1, 2022, acknowledging the request of the accommodation request.  JSUF 112.

51.     On April 15, 2022, Ms. Hollenbach sent another e-mail in response asking for additional information about Plaintiff's condition.  Exh. P-30: 4/15/22 e-mail.

52.     While DSO does not determine whether the requested accommodation will be granted or denied and what, if any, alternative accommodation will be offered, the DSO, who is the initial point of contact for the employee on the accommodation request, is authorized to seek additional information from the employee related to those decisions on behalf of other staff involved in the decision, regardless of what stage in the process the request is at and even if some information had already been provided to the DSO.  Pena Dep. (Exh. P-72) at 39:12-42:14.

53.     Hollenbach's e-mail did not say this information was needed for purposes of determining whether Plaintiff was disabled or the accommodation request. Exh. P-30: 4/15/22 e-mail.

54.     On April 26, 2022, Attorney McKinley sent a strongly-worded e-mail to KU's then counsel in the federal lawsuit, DAG Kathy Le, complaining about Ms. Hollenbach's April 15, 2022 e-mail to Plaintiff, which she characterized as "alarming" and "concerning" and instructing that any further inquiries regarding Plaintiff's disability status be directed to Attorney McKinley. Exh. D-8.

55.     After the April 26, 2022 e-mail, neither Attorney McKinley nor Plaintiff made any other attempt at communications with KU's HR, DSO, or counsel regarding the Fall 2022 accommodation request.

**SPRING 2023 SEMESTER**

56.     On December 20, 2022, Ms. Weidman presented Plaintiff with an alternative accommodation:

> Hello Carolyn,
>
> We are revisiting your request for ADA accommodation and are offering the following accommodation as an alternative to the one you requested:
>
> We will convert the computer lab behind Old Main to a computer classroom. This room will have one row of desks removed to allow for the installation of an ADA-compliant presenter podium, which will be enclosed on three sides with a plexiglass shield. The class capacity would be capped at 35 students. Appropriate audio-visual equipment (screen, whiteboard, projector, etc.) will be installed. Two portable air scrubbers will be placed in the room to increase ventilation and air exchange. This is a standalone room with its own exterior entrance and restroom facility. Access to the room during the day will be limited to those classes scheduled there and disinfecting wipes will be available to wipe down areas as desired. This should provide a larger computer-equipped space with additional ventilation and air exchange and reduced foot traffic.
>
> In order to have this work completed in time for the start of the spring semester, we will need to submit the Facilities and IT work orders in a very short timeframe. If you have questions about our offer or would like to discuss, please let me know. I am in the office the rest of the week. I would ask that you let me know if you accept or reject the offered accommodation by the close of business on Thursday 12/22/22.
>
> Regards,
>
> Jennifer

Exh. D-9, pp. 5-6.

57.     Dr. Gardner responded to Defendant Weidman on December 22, 2022 asking ten questions about the proposed alternative accommodation:

> Hello Jennifer,

10

I am assuming this offer of an accommodation is an acknowledgement by the university of my medical condition being treated as disability and there is no need to respond to the request by McKenzie Hollenbach for further medical information. If I'm wrong, of course, I will treat your offer as offered prematurely at this time.

Assuming you have no questions on my disability, your offer raises questions for me related to my disability-related health and safety concerns. In order to minimize my interactions with Dr. Shah (you can understand that a medical school professor who is also a practicing physician would prefer I have all of the information at one time) would you kindly answer the following question about the proposed accommodation so I can go to him with a completed plan.

1. How would I enter the building safely? Would I go straight from my car to class? If not, how would I navigate the elevators and/or stairwell leading from my office to the classroom building? (The current letter from my doctor requires me to avoid crowds.)
2. If I am using my office for office hours, how would the students be distanced from me there? Would I be able to require masks?
3. Would the students in my classes be required to be current with the Covid vaccines or report their status of same?
4. Would students be tested for Covid at regular intervals? Would they be required to have a negative Covid test on the first day of class?
5. Could the students be required to wear an N-95 mask in the classroom?
6. What are the physical dimensions of the classroom? Would the 35 students be socially distanced?
7. Since this room will remain a computer classroom, it is difficult to imagine how a computer lab would be a conducive environment for my classes. Some labs have had laptops that were stowed in the computer tables when not needed, allowing for students to be sitting at a regular desk/table environment. What would be the computer setup in the lab?
8. You mention the access to the classrooms during the day will be limited to those classes scheduled there. Would those classes be only for those faculty needing this kind of accommodation? Would this lab be open in the evening to any student or faculty?
9. Would access to the restroom facility in the building be limited to those individuals (students and faculty) using the building?
10. Would adding the two air scrubbers put the classroom in compliance with the CDC Guidelines for the air filtration suggested for Institutes of Higher Education?

> If you could kindly respond as soon as you possibly can, I will present one completed plan to my doctor.
>
> Sincerely,
>
> Carolyn

Exh. D-9, pp. 4-5.

58. On January 3, 2022, Weidman provided a response to each of the ten questions about the proposed new classroom:

> Hello Carolyn,
>
> I hope you had a nice holiday season.
>
> Your medical condition being considered a disability has never been an issue. At issue is the reasonableness of the accommodation you requested. While we continue to engage in the interactive process, we still need updated and additional medical documentation as requested previously. Kindly provide the requested medical documentation as soon as possible.
>
> In response to your questions, please see below:
>
> 1. How would I enter the building safely? Would I go straight from my car to class? If not, how would I navigate the elevators and/or stairwell leading from my office to the classroom building? (The current letter from my doctor requires me to avoid crowds.) <span style="color:red">The classroom in question is on the first floor in a standalone building behind Old Main, with a ground-level exterior entrance. There is a parking area directly behind the building. We recommend you avoid use of the elevator if you want to avoid being in a confined space with others, and there shouldn't be crowds in that stairwell in Old Main.</span>
> 2. If I am using my office for office hours, how would the students be distanced from me there? Would I be able to require masks? You can meet with students individually to avoid crowds, you can wear a face mask and face shield to protect yourself. <span style="color:red">You can have the student seated as far away from you in your office as possible or you can schedule your office hours in an alternate location providing you with more space. You can ask someone to wear a mask, but we cannot require anyone to wear a mask.</span>

3. Would the students in my classes be required to be current with the Covid vaccines or report their status of same? Covid vaccines are not required of anyone. Students are not required to disclose their vaccination status. In addition, these safeguards we are offering are to address these concerns.

4. Would students be tested for Covid at regular intervals? Would they be required to have a negative Covid test on the first day of class? Covid testing is not required. The safeguards being offered are to address your safety concerns.

5. Could the students be required to wear an N-95 mask in the classroom? No, masks of any type may not be required.

6. What are the physical dimensions of the classroom? Would the 35 students be socially distanced? The room holds 48 seats. In order to provide greater social distancing, we are capping the enrollment at 35 students. We would eliminate the first row of seats to install ADA-compliant presenter podium, which will be enclosed on three sides with a plexiglass shield. In addition the first row of seats would be left empty.

7. Since this room will remain a computer classroom, it is difficult to imagine how a computer lab would be a conducive environment for my classes. Some labs have had laptops that were stowed in the computer tables when not needed, allowing for students to be sitting at a regular desk/table environment. What would be the computer setup in the lab? We are installing all the necessary computer and A/V equipment to make the classroom conducive to learning. Whether there is a 2 computer monitor or laptop setup should not interfere with your delivery of the course material to your students.

8. You mention the access to the classrooms during the day will be limited to those classes scheduled there. Would those classes be only for those faculty needing this kind of accommodation? Would this lab be open in the evening to any student or faculty? During the day, access to the room would be limited to those students and faculty with classes scheduled in that room. The only classes to be scheduled in this room would be for those faculty needing this type of accommodation. The room would remain open to any student or faculty in the evenings. We are providing disinfecting wipes in the classroom for use by anyone who may wish to do so.

9. Would access to the restroom facility in the building be limited to those individuals (students and faculty) using the building? While use of the restroom is not specifically restricted, unless you are using that classroom, you wouldn't know there was a restroom there.

10. Would adding the two air scrubbers put the classroom in compliance with the CDC Guidelines for the air filtration suggested for Institutes of Higher Education? The CDC guidelines provided recommendations/suggestions, not requirements. Two air scrubbers will address the ventilation and air exchange in the classroom.

>Please let me know if you have any other questions I can help with.
>
>Regards,
>
>Jennifer

Exh. D-9, pp. 2-3.

59. On January 5, 2023, Gardner responded with three additional questions regarding the proposed classroom:

>Jennifer,
>
>Thank you for this information. Would you be able to answer a couple of questions regarding the response.
>
>Regarding number 6—thank you for the room capacity. I was asking for the physical dimensions of the room so I could calculate the square footage. If you have the square footage that would be fine. Otherwise, the dimensions of the room would be helpful.
>
>Regarding number 7, would you happen have the actual room computer configuration. Could we get it from IT? There is quite a difference in the how the space would work for my type of courses regarding the computer monitors, etc. My students engage in group activities. There is considerable academic literature in this area known as the sociiomateriality of learning spaces that address the learning environment.
>
>Regarding number 10, would you provide more information on the air scrubbers.
>
>I have reached out to my doctor.
>
>Thank you,
>
>Carolyn

Exh. D-9, p. 2.

60. On January 13, 2023, Weidman responded to these follow up questions and asked Gardner to inform her by January 16, 2023 if the proposed classroom was acceptable:

>Hello Carolyn,

14

The room is 11,212.72 cubic feet (1401.59 s.f. x 8' high ceiling).

The current computers in the room are all-in-one units on the desktops but students seated will be able to see each other and the speaker at the front of the room.

The Carrier Air Scrubbers have HEPA filters and MERV 13 filters. The goal is to have a minimum of 6 air changes per hour. One air scrubber in that room can't meet the demand, so we would place two units. We also have a bi-polar ionization unit on the heat pump supplying this space and increased MERV filtration. No manufacturer will certify that with the use of their equipment the air in the space is COVID free. All that can be done is add layers of protection to minimize the odds of catching COVID in any particular space.

Please let me know if you have any other questions. Based upon the information above, please advise if you would like to accept these reasonable accommodations and return to teaching as described above, or if you wish to continue with an FMLA leave for the spring semester. Please respond by end of business on 1/16/23. As you are aware, classes are beginning in less than two weeks. This will allow the department to plan accordingly.

Regards,
Jennifer

Exh. D-9, pp. 1-2.

61.  On January 16, 2023, Gardner responded:

Jennifer,

Thank you for the information. As you know, the current TRO litigation is not yet resolved, and KU is not open for business on Monday, January 16th in observation of Martin Luther King Day. As you are aware that Judge Schmehl has asked me to provide a supplemental letter from my doctor by January 18, 2023 regarding your recent proposal. I am making my best efforts to do that. My attorneys will be addressing these issues with the doctor's office, the Court, and the OAG next week.

Carolyn

Exh. D-9, p. 1.

15

62. Three days later, Plaintiff's formally rejected the alternative accommodation (in KU's form) stating:

> The above is not a Reasonable Accommodation based on the recommendation of my doctor (see attached letter dated January 18, 2023).
> As an alternative accommodation I am requesting an extension of my Leave Without Pay (LWOP).

ECF No. 47, p. 3 (Exh. 31, p. 3)

63. To date, Plaintiff has not proposed any additional steps that KU can take to make the special classroom acceptable for her to teach in person.

64. The special classroom alternative accommodation proposed in December 2022 remains available to Plaintiff and has never been withdrawn by KU.

## FALL 2023 SEMESTER

65. As noted in Plaintiff's Statement of Addition Undisputed Facts, ¶ 55, in March 2023 KU counsel e-mailed Attorney McKinley, suggesting that Plaintiff and KU skip the accommodation request process for Fall 2023, since it is anticipated that Plaintiff will again request an accommodation of fully remote teaching for the Fall 2023 that KU will again not grant that particular request, and just agree that will be their positions. The e-mail further noted that the special classroom remained available.  Exh. D-10, pp. 4-5

66. Attorney McKinley rejected this offer and considered it "further evidence of intentional discrimination and retaliation."  Exh. D-10, p.1.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MICHELLE A. HENRY<br>Attorney General |
| Date: August 11, 2023 | By:  /s/ Matthew Skolnik<br>Matthew Skolnik |
| OFFICE OF ATTORNEY GENERAL<br>1600 Arch Street, Suite 300<br>Philadelphia, PA 19103<br>Phone: (215) 560-2136<br>Fax:    (717) 772-4526<br>mskolnik@attorneygeneral.gov<br>kbradford@attorneygeneral.gov | Senior Deputy Attorney General<br>Attorney ID No. 89423<br><br>Kevin Bradford<br>Senior Deputy Attorney General<br><br>Karen M. Romano<br>Chief Deputy Attorney General<br>Civil Litigation Section<br><br>*Counsel for Defendants* |

### CERTIFICATE OF SERVICE

I, Matthew Skolnik, hereby certify that the foregoing Defendants' Statement of Additional Undisputed Facts is available for viewing and downloading from the Court's Electronic Case Filing system by all counsel of record.

Date: August 11, 2023        By:    /s/ Matthew Skolnik
                                             Matthew Skolnik
                                             Senior Deputy Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLYN GARDNER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-1034 |
| | : | |
| KUTZTOWN UNIVERSITY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### DEFENDANTS' INDEX OF EXHIBITS
### IN SUPPORT OF THEIR STATEMENT OF ADDITIONAL UNDISPUTED FACTS

| Exhibit # | Description |
|---|---|
| D-1 | "Remote students are more stressed than their peers in the classroom, study shows." Erin Einhorn, *NBC News* |
| D-2 | "Equity in online learning" Tamara Tate & Mark Warschauer, *Educational Psychologist*; Vol. 57, Issue 3, pp 192-206 |
| D-3 | "Problems in Online Classes" Jake Shore, *Seattle Post-Intelligencer* |
| D-4 | CDC end of COVID emergency declaration (May 5, 2023) |
| D-5 | "A Positive Covid Milestone" David Leonhardt *The New York Times* |
| D-6 | January 19, 2022 e-mail with Plaintiff regarding larger classroom |
| D-7 | January 14, 2022 letter from Plaintiff's counsel |
| D-8 | April 26, 2022 e-mail from Plaintiff's counsel |
| D-9 | E-mail exchange with Plaintiff regarding special classroom (Dec 2022-Jan 2023) |
| D-10 | E-mail exchanged with Plaintiff's counsel regarding Fall 2023 (March-April 2023) |
| D-11 | Collective Bargaining Agreement, pages 5, 128, 129 |