**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROLYN GARDNER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-1034 |
| | : | |
| KUTZTOWN UNIVERSITY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2023, upon consideration of Plaintiff's Motion for Partial Summary Judgment (Doc. 43), Defendants' opposition thereto and Cross-Motion for Summary Judgment (Doc. 63), the parties' Joint Statement of Undisputed Facts (Doc. 52, at 1-24), Defendants' response to Plaintiff's Statement of Supplemental Facts (Doc. 61), Defendants' Statement of Additional Undisputed Facts (Doc. 62), Plaintiff's response to Defendants' Cross-Motion for Summary Judgment, and the oral argument thereon, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment is DENIED;

2. Defendants' Cross-Motion is GRANTED; and

3. Judgment as a matter of law is hereby ENTERED in favor of Defendants on all counts of Plaintiff's Complaint.

4. The Clerk of Court shall marked this case CLOSED.

**BY THE COURT:**

_____
**JEFFREY L. SCHMEHL, J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROLYN GARDNER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-1034 |
| | : | |
| KUTZTOWN UNIVERSITY, *et al.*,, | : | |
| | : | |
| Defendants. | : | **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants, Kutztown University, President Kenneth S. Hawkinson, Jesus Peña, and Jennifer Weidman, by their undersigned counsel, hereby move for summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff Carolyn Gardner's Complaint.  As explained in the accompanying brief, among other grounds for this cross-motion, no reasonable factfinder could find that any of the Defendants intentionally discriminated or retaliated against Plaintiff based upon a disability or any protected activity, respectively.  Oral argument is requested.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: August 11, 2023

OFFICE OF ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2136
Fax:    (717) 772-4526
mskolnik@attorneygeneral.gov
kbradford@attorneygeneral.gov

By:    */s/ Matthew Skolnik*
Matthew Skolnik
Senior Deputy Attorney General
Attorney ID No. 89423

Kevin Bradford
Senior Deputy Attorney General

Karen M. Romano
Chief Deputy Attorney General
Civil Litigation Section

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROLYN GARDNER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-1034 |
| | : | |
| KUTZTOWN UNIVERSITY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' OMNIBUS BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
<u>IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Defendants Kutztown University, President Hawkinson, Mr. Peña, and Ms. Weidman,

through their undersigned counsel, respectfully submit this Brief in opposition to Plaintiff's

Motion for Partial Summary Judgment and in support of their Cross-Motion for Summary

Judgment. Oral argument is requested.

**I.      INTRODUCTION**

> *[I]t is not reasonable to charge us the same price as if we were
> taking classes in person. We cannot equate our current online
> education to one on campus.*

– Ashleigh Blackwell, "Zoom University Is Not Worth $56,000," <u>The Gettysburgian</u>,
4/22/20, available at <u>https://gettysburgian.com/2020/04/opinion-zoom-university-is-not-
worth-56000/</u> (last accessed 8/7/23).

\* \* \* \*

Plaintiff Carolyn Gardner's brief in support of her motion for partial summary judgment

relies upon several unstated, and entirely false, premises. To wit, Plaintiff's brief:

- Equates Professor Gardner's preferred accommodation – remote, rather than in-
  person teaching until the risk of being exposed to Covid-19 is effectively zero –
  with being the only reasonable accommodation (Pl.'s Mem. (Doc. 51) at 40);

- Equates Kutztown University's ("the University") rationale for allowing remote teaching during the worst of the Covid pandemic (Spring 2020), as then-required by Executive Order, with unproven reasons to allow it indefinitely, if not forever (Pl.'s Mem. at 14);

- Equates the University's previously designated online courses with synchronous remote instruction for designated in-person courses (Pl.'s Mem. at 16-17);

- Equates district court cases from other Circuits, deciding *defendants'* dispositive motions, with scant binding authority concerning a *plaintiff*'s dispositive motion.

If, and only if, these premises are accepted, knowingly or unknowingly, then the plaintiff's giant leaps of logic could be transformed into small incremental steps. But under Fed. R. Civ. P. 56, the Court must view the evidence presented in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With respect to Plaintiff's pending motion (ECF Doc. No. 43), Defendants are the non-moving parties who are entitled to, at the very least, a decision based on the evidentiary record rather than on Plaintiff's false premises. Based solely on the record in this lawsuit, as opposed to the dozens of Plaintiff's exhibits from the factually distinguishable *Oross v. Kutztown Univ.* lawsuit which she appended[1] to her brief, not only does the *Gardner* record defeat Plaintiff's present motion, it supports the entry of judgment as a matter of law in favor of all Defendants.

---

[1] The Court's (Hon. Jeffrey L. Schmehl) subsequent Order (Doc. 60, ¶ 1) states that Defendants' within response must be "limited to the state of the record that existed when Plaintiff filed her motion[.]" Consideration of Plaintiff's Appendix, especially Volumes II through V, should be similarly limited under the same logic (not to mention Local Rule 5.1.2(5)(a)-(b)). Although Plaintiff discloses her reliance upon the *Oross* record in her Table of Contents (Doc. 43-1) for Volumes III-V, she does not volunteer that parts of Volume II – Docs. 48-2 (Ex. 71), 48-4 (Ex. 73), 48-6 (Ex. 75), 49-1 (Ex. 77) – are transcripts from the other lawsuit, not this one. The same is true for Doc. 44-11 (Pl.'s Ex. 12) and possibly other exhibits.

Defendants are not required to respond to Plaintiff's overlapping of arguments in the same order as in her brief (Doc. 51) nor is it, for the most part, clear where one of Plaintiff's causes of action ends and another begins. To ease the Court's review, Defendants' summarize Gardner's claims, vis-à-vis her pending Motion, as follows:

| Count | Claim | Defendant | Included in Pl.'s MSJ? |
|-------|-------|-----------|------------------------|
| I | Rehabilitation Act: Failure to Accommodate | Kutztown | Yes |
| II | Rehabilitation Act: Facial Invalidity of Defendants' Blanket Policy | Kutztown | Yes |
| III | Rehabilitation Act: Intentional Discrimination Because of Disability (Direct Evidence) | Kutztown | Yes |
| IV | Rehabilitation Act: Intentional Discrimination Because of Disability (Pretext) | Kutztown | No |
| V | Rehabilitation Act: Prohibited Standards, Criteria, or Methods of Administration | Kutztown | Yes |
| VI | Rehabilitation Act: Retaliation and Interference | Kutztown | Interference only |
| VII | Rehabilitation Act: Interference and Discrimination under Rehabilitation Act | Hawkinson | No |
| VIII | § 1983 Retaliation for Deprivation of Rights under Rehabilitation Act | Hawkinson | No |
| *(Numbering skips IX and X)* | | | |
| XI | § 1983 for Violation of Pl Rights under Rehabilitation Act | Peña | No |
| XII | § 1983 for Violation of Pl Rights under Rehabilitation Act | Weidman | No |

Moreover, in direct contravention of the Honorable Jeffrey L. Schmehl's Policies and Procedures, Plaintiff failed to limit her brief to twenty-five pages or to move for leave to exceed the Court's page limit. Consequently, pages 26 through 47 of Plaintiff's brief – which are largely redundant in any event – should be disregarded, if not stricken, and Defendants primarily focus on Plaintiff's first 25 pages herein.[2]

---

[2] In the event the Court grants a subsequently filed motion for Plaintiff to exceed the 25-page limit, Defendants respectfully submit that they should be given an opportunity to file a sur-response or address Plaintiff's page-limited arguments at oral argument.

## II.     ARGUMENT

### A.     Standard applicable to Cross-Motions for Summary Judgment

The Court is intimately familiar with the applicable standard of review under Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007). Conclusory statements are not facts and cannot create issues of fact.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888-89 (1990).

Cross-motions for summary judgment "should not be interpreted necessarily to mean that judgment should be entered on either one of them." *Green Party of Penn. v. Aichele*, 89 F. Supp. 3d 723, 731 (E.D. Pa. 2015). Instead, "[e]ach party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law." *Id.* (citing 10A Charles Alan Wright and Arthur R. Miller, *Federal Practice & Proc.,* § 2720 (3d ed. 2014)).  As in any summary judgment motion, the determination whether a genuine issue concerning a material fact exists is itself a question of law that the Court must decide.  A party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of his own motion. *Id.* As Wright and Miller observe, "It follows that the legal theories the movant advances in support of a Rule 56 motion and the assertion that there is no issue of material fact may not be used against the movant when the court rules on his adversary's motion." *Id.*

**B.      Gardner cannot establish a *prima facie* case of Discrimination under the Rehabilitation Act, entitling KU to Summary Judgment on Counts I-IV.**

Primarily in Count III, but also throughout her Complaint and summary judgment brief, Gardner argues that the University intentionally discriminated against her because of her disability. To establish a prima facie case of discrimination under Section 504 of the Rehabilitation ("Rehab") Act, 29 U.S.C. § 794(a), or the ADA[3], a plaintiff must initially show, "(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless . . . prevented from performing the job." *Donahue v. Conrail*, 224 F.3d 226, 229 (3d Cir. 2000) (internal citation omitted); *see Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (same elements). "If the plaintiff is able to meet these burdens, the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer." *Donahue*, 224 F.3d at 229. An undue hardship[4] involves "significant difficulty or expense in, or resulting from, the provision of the accommodation." 29 C.F.R. § 1630, App. § 1630.2(p).

For the purposes of the parties' present cross-motions, the key inquiry is the second one above – i.e., whether Gardner is a qualified individual – although this <u>not</u> the only element in dispute.[5]  The term "qualified individual" means that she "satisfies the requisite skill, experience,

---

[3] "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) . . ." 29 U.S.C. § 794(d).

[4] Although undue hardship was not pled as an affirmative defense, Plaintiff has been on notice of the defense for at least the last twelve months. *See* Doc. 21 (filed 8/21/22), at Brief pp. 4-6 & 16.

[5] If Defendants' cross-motion is denied in relevant part, whether Plaintiff's medical condition substantially limits a major life activity (at all material times) can be determined by the factfinder. *See* JSUF 14. The Court need not reach the third element, because Plaintiff fails to meet the second element as a matter of law, but Defendants will briefly address it below nonetheless.

education and other job-related requirements of the employment position . . . and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). The Third Circuit has instructed parties to apply the EEOC's regulations and interpretive guidance concerning the ADA in Rehabilitation Act cases. *See Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 312 n. 5 (3d Cir. 1999) (citing *Mengine v. Runyon*, 114 F.3d 415, 419-20 (3d Cir. 1997)); 42 U.S.C. § 12111(8) (defining 'qualified individual' as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). Under § 12111(8) of the ADA, as well as the Rehab Act, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.*

The EEOC's regulations set forth a non-exhaustive list of evidentiary examples that may assist courts with identifying the "essential functions" of a job: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3). "[N]one of the factors nor any of the evidentiary examples alone are necessarily dispositive." *Skerski v. Time Warner Co.*, 257 F.3d 273, 279 (3d Cir. 2001).

Contrary to courts' deference to the employer's judgment, the <u>employee</u>'s judgment is irrelevant to the essential function inquiry. "Neither the statutes nor regulations nor EEOC guidance instructs the courts to credit the employee's opinion about what functions are essential."

*EEOC v. Ford Motor Co.*, 782 F.3d 753, 764 (6th Cir. 2015). As the Sixth and Tenth Circuits have noted, "[a]n employee's unsupported testimony that she could perform her job functions from home does not preclude summary judgment [for the employer], for it does not create a genuine dispute of fact." *Id.* at 763-64 (citing *Mason v. Avaya Comms., Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004)).

Crucially, although an individual with a disability is not required to accept an accommodation, "if such individual rejects a reasonable accommodation . . . and cannot, as a result of that rejection, perform the essential functions of the position, the individual **will not be considered qualified**" under the ADA. 29 C.F.R. § 1630.9(d) (emphasis added). In a non-precedential opinion cited by this Court in Oross (Doc. 69 at 45), *Yovtcheva v. City of Phila. Water Dep't*, 518 Fed.Appx. 116 (2013), the Third Circuit quoted § 1630.9(d) when holding that the plaintiff – who reported "having health problems in the laboratory as a result of her work with methyl tertiary butyl ether ('MTBE')" and was offered a respirator by her employer, *see id.* at 118 – was "not a 'qualified individual' under the ADA because she refused to try the partial-face respirator made available to her." *Id.* at 121. Under 29 C.F.R. § 1630.9(d), the Court of Appeals explained, "this case requires us to hold that the Water Department made an offer of a reasonable accommodation when it offered to supply Yovtcheva with a partial-face respirator for the purpose of protecting her from the effects of MTBE." The same reasoning has been applied, by multiple courts, to the Rehab Act. *See Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997) ("both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith[] [i]n order to satisfy the requirements of the Rehabilitation Act") (citing Fifth and Seventh Circuit cases).

"The determination of whether an individual with a disability is qualified is made at the time of the employment decision, and the burden is on the employee to prove that he is an

'otherwise qualified' individual." *Kieffer v. CPR Restoration & Cleaning Serv., LLC*, 200 F. Supp. 3d 520, 533 (E.D. Pa. 2016), *aff'd*, 733 Fed. Appx. 632 (3d Cir. 2018) (citing cases).

The first "employment decision" at issue here was, on August 26, 2021, to deny Gardner's request for a "synchronous remote work accommodation." *See* JSUF ¶ 54; *see also* JSUF ¶ 49. On that date – *through and including today* – Gardner was not a qualified individual (or at least not as a matter of law). This is because of <u>either one</u> of the following two reasons:

1. Gardner is unable or unwilling to teach in-person, which is an essential function of her position at KU, no matter how many Covid safeguards are put in place by the University; or

2. whether in-person teaching is an essential function of Gardner's associate professor position is a question of fact for the jury.

The controlling Collective Bargaining Agreement and deposition testimony in <u>this</u> lawsuit – which, contrary to Plaintiff's brief and exhibits, is the only lawsuit and <u>evidentiary record</u> presently at issue – establishes the essential nature of in-person teaching and in-person learning, at Kutztown University. KU is a small university with the majority of course offerings being traditional, face-to-face classes that allow students to interact with faculty and fellow students in smaller classes and have unplanned interactions outside of the classroom. As the University President, Dr. Hawkinson, testified, he is a firm believer that in-person instruction is more effective than remote instruction, which leads to higher grades and graduation rates and therefore seeks to maintain the University's business model as a primarily in-person instruction institution. Hawkinson Dep. (Doc. 48-1), at 56:24-57:14 ("no question that the in-person experience with a professor . . . is a far more superior experience . . . for all students"); *id.* at 112:22-115:4. *See also* CBA excerpts, Exhibit **11** to Defs.' SUF, Article 4, § B ("Duties and Responsibilities of Faculty Members").

Consistent with this philosophy, aside from 2020 during the height of the COVID pandemic, which at the time was mandated by Executive Order, no KU faculty member has ever taught fully online.  The fact that the University does offer some online classes does not call this testimony into doubt. Nor does studies that students prefer online classes. Whether or not the University's business model makes good business sense is irrelevant to the analysis.  In the alternative, contrary to the interlocutory July 25, 2023 decision in the *Oross* lawsuit, in which the Court acknowledged the general rule in the Third Circuit that "the essential function determination is a factual question" (*Oross* Doc. No. 69, at 37) (citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998) (en banc)) but nonetheless found that "there are no factual issues for a jury to resolve" (*see id.* at 38), a genuine dispute exists as to whether in-person teaching is an essential function of **Gardner's** position as an associate professor. *See Turner*, 440 F.3d at 612 (quoting *Deane*). Further, the University incurs an additional expense as a result of holding classes online. *See* Defs.' Stmt. of Addl. Undisputed Facts (DSUF), ¶ 4, and citation therein.  Granting all reasonable inferences in favor of the non-moving party, which is the University on Plaintiff's motion, Gardner's interpretation of the requirements of her teaching position should be disregarded under *Ford Motor Co.*, *supra*, and its progeny.

Moving to the third element of Plaintiff's prima facie case, despite hundreds if not thousands of pages of appendices, there simply is no evidence in the record in <u>this</u> lawsuit that Gardner was "prevented from performing" her job. *See Donahue*, 224 F.3d at 229. Moreover, the EEOC's Guidance on teleworking as a reasonable accommodation supports the University's position, not Gardner's, at least regarding Counts I-III. Specifically, the EEOC has answered as follows:

> **May an employer make accommodations that enable an employee to work full-time in the workplace rather than granting a request to work at home?**

> Yes, the employer may select any effective accommodation, even if it is not the one preferred by the employee. Reasonable accommodations include adjustments or changes to the workplace, such as: providing devices or modifying equipment, making workplaces accessible (e.g., installing a ramp), restructuring jobs, modifying work schedules and policies, and providing qualified readers or sign language interpreters. An employer can provide any of these types of reasonable accommodations, or a combination of them, to permit an employee to remain in the workplace.

U.S. EEOC, Guidance No. EEOC-NVTA-2003-1, "Work at Home/Telework as a Reasonable Accommodation," available at https://www.eeoc.gov/laws/guidance/work-hometelework-reasonable-accommodation (last accessed 8/8/23).

Rule 56 requires courts to differentiate between disputes and reasonable disputes. It cannot be reasonably disputed that the University providing a classroom to be converted from a computer lab with a separate entrance, a cap of 35 students, additional ventilation and air exchange, including two portable air scrubbers with both HEPA and MERV filters and bi-polar ionization unit on the heat pump used for the space, reduced foot traffic, and an ADA-compliant instructor podium, enclosed on three sides with a plexiglass shield, constitutes the exact type of "adjustments or changes to the workplace" approved by the EEOC. *See id.*; JSUF 128 and citations therein; *see also* JSUF 96 (offering earlier "alternative accommodation" behind a plexiglass shield and wearing a face shield). Not only does Plaintiff's claim that she was "prevented from performing her job" fail as a matter of law, it is getting more and more difficult to comprehend, given Gardner's voluntary move to North Carolina – far more of a hindrance to her job performance than the University's compulsory attendance requirement. *See* 8/22/22 Order (Doc. 22), at 3 ("She is not, as she claims, faced with a Hobson's choice . . .").

10

For the foregoing reasons, Plaintiff cannot establish a prima facie case and cannot proceed with her claims of intentional discrimination.[6]

### C.     Defendant KU's legitimate in-person teaching requirement was made in good faith, not as pretext for disability discrimination.

Under the *McDonnell Douglas* burden-shifting paradigm, 411 U.S. 792, the burden to articulate a legitimate, nondiscriminatory reason shifts to the employer if *and only if* the plaintiff meets her initial burden to make a prima facie showing of discrimination. Because Gardner fails to do so, as explained in section II.B, *supra*, the University has no further burden and Plaintiff's intentional discrimination claims should have already been disposed of. That said, out of an abundance of caution, we will briefly address this phase.

As the Court explained in its July 25, 2023 *Oross* opinion, the notion that "converting classes and office hours from an in-person modality to a remote modality would be a fundamental alteration of the University's course offerings to students" (*Oross* Doc. 69, 7/25/23, at 41) constitutes a legitimate, nondiscriminatory reason for the denial of Gardner's request to work exclusively from her new home. Although Plaintiff's brief argues in favor of pretext, there is no <u>evidence</u> of pretext. Thus, the University is entitled to judgment as a matter of law on Counts I through IV of the Complaint.

### D.     In the alternative to all of Counts I-IV, Defendant is entitled to Summary Judgment on, at a minimum, the Failure to Accommodate claim (Count I).

Plaintiff's Failure to Accommodate claim (Count I) requires her to prove that (1) KU knew about Gardner's disability; (2) Gardner asked for an accommodation or assistance; (3) the University did not make a good-faith effort to assist the employee in seeking accommodations; and (4) Gardner could have been accommodated but for the University's lack of good faith. *See*

---

[6] Obviously, if the Court determines that genuine dispute exists, then that same dispute would necessitate denial of Plaintiff's Motion for Partial Summary Judgment.

*Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999); *Campo v. Mid-Atl. Packaging Specialties, LLC*, 564 F. Supp. 3d 362, 388-89 (E.D. Pa. 2021) (citing same). The first two elements are of course not in dispute. Plaintiff however cannot establish the final two elements based on the undisputed facts here.

If an employee requests an accommodation, the employer and employee must determine an accommodation that is reasonable through a "flexible, interactive process." *Doyle v. Senneca Holdings, Inc.*, C.A. No. 20-1293, 2022 WL 1239501, at *4 (W.D. Pa. Apr. 27, 2022) (quoting *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 187 (3d Cir. 2009)). This requires good faith efforts by both the employer and employee. *Taylor*, 184 F.3d at 317. "Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered the employee's request, and offer and discuss available alternatives when the request is too burdensome." *Campo*, 564 F. Supp. 3d at 389 (quoting *Taylor*, 184 F.3d at 305). The fact that the interactive process did not culminate in a proposed accommodation that was acceptable to the employee does not establish a lack of good faith by the employer.

As explained in Section II.B, "an employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Yovtcheva*, 518 Fed.Appx. at 122 (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996); *see also Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (en banc) (same); *Hofacker v. Wells Fargo Bank Nat'l Ass'n*, 179 F. Supp. 3d 463, 469 (E.D. Pa. 2016) ("an employer has no requirement to provide an employee the exact accommodation that they want"). For example, "when an employee requests a transfer as reasonable accommodation and the employer offers alternative reasonable accommodation,

which the employee then refuses, the employer cannot be liable for failing to reasonably accommodate the employee by not transferring him to another position." *Gile*, 95 F.3d at 499. By way of further example, indefinite leave with benefits (*see* JSUF 136) is not a reasonable accommodation either. *See Fogleman v. Greater Hazleton Health Alliance*, 122 Fed.Appx. 581, 586 (3d Cir. 2004) (non-precedential). "[E]mployers are not required to modify the essential functions of a job in order to accommodate an employee." *Donahue*, 224 F.3d at 232.

Here, the evidentiary record demonstrates the University's good faith participation in the interactive process:

### 1. Accommodation request for Fall 2021

On August 20, 2021, Plaintiff made an accommodation request for 100% remote teaching for the Fall 2021 semester. Prior to formally submitting this request form, Plaintiff discussed it with Ms. Weidman in a 30-minute phone call.  DSUF ¶ 38. Ms. Weidman had also discussed the 100% remote teaching request with Plaintiff's Dean, although the discussion may not have not been specific to Plaintiff. DSUF ¶ 39. Plaintiff's request was denied on August 26, 2021.  JSUF 38. In response, Plaintiff submitted a request for FMLA leave for the Fall 2021 semester for the in-person classes she was scheduled to teach. This request was granted.

### 2. Accommodation request for Spring 2022

On January 10, 2022, after Plaintiff made the same request for the Spring 2022, Plaintiff met with the new DSO Director, Ms. Hollenbach. JSUF 77-79. Ms. Hollenbach then shared with Ms. Weidman the information she gathered from Plaintiff. JSUF 81. On January 12, 2022, the University rejected Plaintiff's requested accommodation, but offered an alternative accommodation of a face shield, along with a plexiglass barrier. JSUF 96. On January 14, 2022, Plaintiff rejected the alternative accommodation. JSUF 98. Nonetheless, the University, through Ms. Weidman, proposed an additional protection of a larger classroom. DSUF 43. Plaintiff never

addressed this proposal, instead directing the University to communicate with her attorney.
DSUF 44. Meanwhile, on January 14, 2022 Plaintiff's attorney inserted herself in the discussion,
demanding that Plaintiff's initial request for 100% remote teaching from home be granted. DSUF
45. Neither Plaintiff nor her attorney ever suggested any additional protections or alternative
measures that would allow her to teach on campus. DSUF 47. They instead filed this lawsuit.
DSUF 48.

### 3. Accommodation request for Fall 2022

By way of a March 31, 2022 e-mail to Ms. Weidman and Ms. Hollenbach, Plaintiff made
an accommodation request for 100% remote teaching for the Fall 2023 semester. JSUF 109.
After Plaintiff twice personally inquired into the status of the request, on April 15, 2022 Ms.
Hollenbach e-mailed Plaintiff requesting further information about her condition and the
treatment. JSUF 116a (p. 19).  In response, Plaintiff provided her most recent FMLA form, and
told Ms. Hollenbach that she has attorneys, that those attorneys have a lot of concerns regarding
Ms. Hollenbach's April 15, 2022 e-mail, and that any communications from KU about her Fall
2022 accommodations should directed to her attorneys. JSUF 116a (p. 20). In response, Ms.
Hollenbach agreed to cease communications with Plaintiff regarding the accommodation
Plaintiff had e-mailed her about. JSUF 116a (p. 20). Meanwhile, Plaintiff's counsel e-mailed
counsel for the University stating that Ms. Hollenbach's April 15, 2022 e-mail to Plaintiff was
"alarming" and "concerning" and instructing that any further communications about her
disability status should be directed to Plaintiff's counsel. DSUF 54. On August 17, 2022,
Plaintiff filed a temporary restraining order seeking a Court order requiring KU to provide her
requested accommodation.  JSUF 118.

### 4. Accommodation request for Spring 2023

On December 20, 2022, in response to Gardner's requested accommodation of 100% remote teaching for the Spring 2023 semester, the University offered an alternative accommodation of a special classroom for Plaintiff to teach her in-person classes. DSUF 56. As described in the e-mail to Plaintiff, the University agreed to convert a standalone computer lab, which has its own entrance and restroom, into a computer classroom. DSUF 56. As part of the conversion, KU would remove one row of student seating, to allow for the installation of an ADA-compliant presenter podium, which will be enclosed on three sides with a plexiglass shield. DSUF 56. Classroom capacity would be capped at 35 students and there would be two portable air scrubbers in the room to increase ventilation and air exchange. DSUF 56. The conversion would include the installation of appropriate audio-visual equipment (screen, whiteboard, projector, etc.). DSUF 56. Access to the room during the day would be limited to those classes scheduled there and disinfecting wipes will be available to wipe down areas as desired.  DSUF 56.

Two days later, Plaintiff e-mailed Ms. Weidman with ten questions which she believed would help her physician assess the proposal, including questions about the size, layout, access to the room, and the spacing of the students from each other.  DSUF 57. Ms. Weidman provided details response to each of the questions, including that the first row of seats in the converted classroom (formerly the second row) would remain empty and that the classroom's use during the day would be limited to classes taught by teachers requiring a similar accommodation. DSUF 58.

In response Plaintiff had additional questions about the air scrubbers, and the layout of the room, as Plaintiff wanted to be sure that students could engage in group activities while in class. DSUF 59. Again, Ms. Weidman provided detailed responses to these questions, informing Plaintiff that the room is 1,400 square feet, has a 8-foot ceiling, that the Carrier brand air

scrubbers have HEPA filters and MERV 13 filters which should allow for six air changes per hour, that the heat pump for the room has a bi-polar ionization unit, and that the classroom would allow for group activities (despite Plaintiff's concern about the spacing of the students amongst themselves). DSUF 60.

Plaintiff, armed with all of this information, rejected the special classroom accommodation. DSUF 62. She suggested no revisions to the proposed classroom and did not suggest any alternative proposal that would allow her to teach on campus. DSUF 63. The only accommodation should would accept is the one she originally requested: 100% remote teaching from home.

As the above undisputed sequence of events shows, KU has in good faith engaged in the interactive process. KU has proposed a number of alternatives based on Plaintiff's requests for accommodation of fully remote teaching – an accommodation that alters the essential functions of the job. Plaintiff has simply rejected all of them, demanded that KU comply with her initial request, and offered no other alternatives. An employee's "insistence on a single unreasonable accommodation and rejection of all other possibilities renders [the employee] the party responsible for the breakdown in the interactive process." *Doyle*, at *5 (citing *Tourtellotte v. Eli Lilly & Co.*, 636 Fed. Appx. 831, 850 (3d Cir. 2016); *Taylor*, 184 F.3d at 316 n. 7).

Applying the four above examples of KU's good faith to the standards of *Taylor* and its progeny, no reasonable factfinder could find in Plaintiff's favor on Count I.

### E.    Defendant KU is entitled to Summary Judgment on Count VI.

Plaintiff's Brief is potentially (unintentionally) confusing when it comes to Count VI, which alleged retaliation and interference by the University in violation of the Rehab Act. When Plaintiff's footnote 1 and the top of page 2 of her brief are read in tandem, it becomes clear that Gardner has moved for summary judgment only on the 'interference' portion of Count VI, not

the retaliation portion. Plaintiff's division of Count VI does not preclude the University's entitlement to summary judgment on all of Count VI.

Beginning with the retaliation portion, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). *See also Ozlek v. Potter*, 259 Fed.Appx. 417, 421-22 (3d Cir. 2007) (unpublished opinion) (applying the framework for analyzing a retaliation case under the ADA to a retaliation case under the Rehabilitation Act (quoting *Krouse*)). To establish the requisite causation, a plaintiff "must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). ADA/Rehab Act retaliation claims are analyzed under the same burden-shifting framework employed by Title VII. *See EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015)

According to Count VI of her Complaint, Gardner engaged in protected activity by (1) requesting reasonable accommodations; (2) opposing KU's alleged "refusal to provide [the] accommodations"; and (3) "standing on her rights through counsel" in this lawsuit. Compl., ¶ 170. It is undisputed that Gardner has requested accommodations which she believes to be reasonable and that the University has denied Gardner's preferred accommodations, regardless of whether or not they are deemed reasonable. But it is entirely unclear how the University is alleged to have retaliated against her specifically for this protected activity rather than simply denying the accommodations in the ordinary course, which is the subject of Count I above.

Importantly, Gardner's first request for an accommodation, for the Fall 2021 semester, was made August 20, 2021. JSUF 49. The request was denied August 26, 2021. JSUF 54. It is

unclear, by way of example, when Gardner "opposed" this denial or when she stood "on her rights through counsel," as ¶ 170 of the Complaint alleges. The lawsuit was filed March 17, 2022; while of course the University was generally aware of the parties' overall dispute concerning in-person versus remote teaching before that date, Defendant has been left to guess when the alleged retaliation occurred. "Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection, courts may look to the intervening period for 'demonstrative proof, such as actual antagonistic conduct or animus against the employee [] or other types of circumstantial evidence." *Kieffer*, 200 F. Supp. 3d at 536 (quoting *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), as amended (Aug. 28, 2007)). Here, there certainly is no record evidence of animus.

Plaintiff's failure to identify when the retaliation allegedly occurred, or any evidence of animus, precludes her from showing the requisite adverse action, let alone causation between elements two and three. *See Krouse*, 126 F.3d at 500. Moreover, the University did not deny **a** reasonable accommodation – it denied Plaintiff's <u>preferred</u> accommodation. As a matter of law, this does not and cannot support a retaliation claim.

As for the interference component of Count VI, Gardner argues that "Defendants" – although only the University is a defendant to Count VI – "routinely misrepresented the fundamental alteration standard to deter" her from exercising her rights under the Rehab Act by "publish[ing] false information to the entire campus community to justify" denials of remote teaching requests. (Pl.'s Mem. at 46.) The purported evidence cited in support of this allegation is President Hawkinson's statement in March of 2021 that "KU would be returning [in Fall 2021] to a primarily face-to-face environment." *See id.* (citing JSUF 32). Again, it is unclear how this statement was false. But even if it proved to be false, it is very far-fetched for Gardner to allege

that the March 2021 statement was intended to interfere with Gardner's exercising her rights under the Rehab Act five months later.

For all the foregoing reasons, Defendant KU is entitled to summary judgment in its favor on Count VI in its entirety.

F. **Counts VII-VIII and XI-XII fail as a matter of law, because there can be no individual liability against Defendants Hawkinson, Peña, or Weidman and because Section 1983 does not offer a remedy for violations of the Rehab Act.**

1. There is no individual liability under the Rehabilitation Act.

The linchpin of the Rehab Act, 29 U.S.C. § 794(a), is the receipt of federal funds. Thus, the Third Circuit has made clear that the statute applies to public entities that receive federal financial assistance, not to individual employees of those entities. *See A.W. v. Jersey City Public Schools,* 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals."); *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002) ("Because the individual defendants do not receive federal aid, Emerson does not state a claim against them under the Rehabilitation Act.") (citing *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605-06 (1986)). As this Court (Schmehl, J.) recently held, Defendants Hawkinson and Peña are "entitled to judgment on any claim brought against them under the R[ehab] A[ct] in general [or] . . . in particular." (*Oross* Op., Doc. 69, at 34-35) (citing cases). The same reasoning applies to Ms. Weidman, who was not a defendant in <u>Oross</u> but is one here.

2. Plaintiff cannot redress the Rehab Act through § 1983 theory of liability.

Count VIII alleges that President Hawkinson is liable under 42 U.S.C. § 1983 for retaliation against Ms. Gardner in violation of the Rehab Act. Counts XI and XII allege that Mr. Peña and Ms. Weidman, respectively, also should be held liable under § 1983 for intentionally discriminating against the plaintiff based on her disability.

It is well settled that Section 1983 cannot be used as a vehicle to address (or redress) the Rehab Act where the claim is "based on the same factual predicate as the claim under Section 504 of the RA." (*Oross* Doc. 69, at 53) (applying *A.W. v. Jersey City Public Schools*, 486 F.3d at 806 and other case law). The law is clear that the Rehab Act, when invoked by plaintiffs, supplants § 1983. *See id.* at 805-06.

Therefore, for both of the foregoing reasons, the individual defendants are entitled to summary judgment on Counts VII, VIII, XI and XII.

### G. In the alternative to Summary Judgment under Section 'F,' Defendants Hawkinson, Peña, and Weidman are entitled to qualified immunity.

In addition, or in the alternative, to being improper parties to Counts VII-VIII and XI-XII, the individual defendants have qualified immunity, which is immunity from suit. Qualified immunity shields state officials, in their individual capacities, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity requires the Court to consider two issues: (1) whether the plaintiff has shown a violation of a federal right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may consider these issues in any order, and the plaintiff's failure to establish <u>either</u> issue entitles a defendant to immunity. *Pearson*, 555 U.S. at 232 & 236.

The lack of a violation of Gardner's federal rights has already been explained, in Sections II.B through F.  Hence, Defendants turn to the "clearly established law" inquiry. As the Third

Circuit recently reiterated in an non-precedential decision, *Dean v. Borough of Glassboro*, 2023 WL 2597586, at *3 (3d Cir. Mar. 22, 2023), "the District Court must look for clearly established law 'in light of the specific context of the case, not as a broad general proposition.'" (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)) (cleaned up). It remains the plaintiff's burden to show that the defendant's conduct violated clearly established law. *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). Such authority "must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In short, there was no clearly established federal right to work from home – or, more specifically, to teach and hold all office hours remotely – as of August 26, 2021 (*see* JSUF 54), or even as of today. Nor was Plaintiff's legal theory that § 1983 may be used as a vehicle to redress the Rehab Act clearly established.  Thus, none of the individual defendants could have violated any of Gardner's federal statutory (let alone constitutional) rights. Consequently, Defendants Hawkinson, Peña, and Weidman are entitled to qualified immunity.

## H.     All claims for emotional/non-economic damages fail as a matter of law.

In *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562, 1576 (2022), the Supreme Court held that "emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here" – one of which was the Rehabilitation Act. *Id.* at 1569-70. Because Congress's authority to regulate operates like a contract, the same rationale "limits 'the scope of available remedies' in actions brought to enforce Spending Clause statutes." *Id.* (quoting *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 287 (1998)). So in this contractual arrangement, by accepting federal funds, a funding recipient understands that it "will be subject to the usual contract remedies in private suits." *Id.* at 1571. The Supreme Court concluded that neither punitive nor noneconomic damages are available in private claims filed pursuant to one of the Spending Clause statutes. *Id.* at 1571-72 (citing *Barnes v. Gorman*,

536 U.S. 181, 189 (2002)). Specifically, *Cummings* was decided in the context of the Rehabilitation Act and the Affordable Care Act.

Applying these now-bedrock principles, in the event some portion of this lawsuit proceeds to trial, as a matter of law the plaintiff cannot recover emotional or punitive damages.

## I.    Plaintiff cannot proceed with her disparate impact claim (Count V).

In Count V, Gardner alleges that KU's in-person teaching/office hours requirement, despite being facially neutral (apparently in the alternative to Count II), has the effect of discriminating on the basis of disability and, thus, has a "disparate impact on people with disabilities." (Pl.'s Mem. at 43.) Both as a matter of law and based on the factual record, the plaintiff cannot proceed with this claim.

"A disparate impact violation is made out when an employer is shown to have used a specific employment practice, neutral on its face but causing a substantial adverse impact on a protected group, and which cannot be justified as serving a legitimate business goal of the employer." *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 346 (3d Cir. 1990). To the extent Gardner argues that courts' approaches to Title VII disparate treatment claims cannot apply to her disparate impact claim under the Rehab Act, for more than forty years the Third Circuit has held otherwise. *See NAACP v. Med. Ctr., Inc.*, 657 F.2d 1322, 1335 (3d Cir. 1981) ("The Supreme Court has not given any indication that it requires a shifting of the burden of persuasion in effects cases.") (citing cases applying *McDonnell Douglas* framework to disparate impact claims). "Moreover, it is illogical to impose a heavier burden on a defendant in a case where a neutral policy results in disparate impact than in one where the charge is unlawful animus. Indeed, if there is to be a difference, quite the opposite result should follow." *Id.*

A disparate impact alone is insufficient to violate Section 504 of the Rehab Act. Plaintiff "must show causation" through "statistical evidence showing that the University's full-duty

policy has disparately caused the exclusion or termination of employees solely on the basis of their disability, despite the fact that such employees could perform the essential functions of their position with or without accommodation." *Oross* Op., 7/25/23 (Doc. 69), at 48 (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). Where "neither party has conducted discovery on an issue that is highly dependent on statistical evidence . . . . Summary judgment is [properly] granted to Defendants on the disparate impact claim." *Frilando v. New York City Transit Auth.*, 463 F. Supp. 3d 501, 518-19 (S.D.N.Y. 2020) (citing, *inter alia*, *B.C. v. Mount Vernon City Sch. Dist.*, No. 11 Civ. 1411, 2014 WL 4468082, at *7 (S.D.N.Y. Aug. 28, 2014) (concluding that plaintiffs failed to make a prima facie showing of disparate impact under the ADA or Rehabilitation Act where the record contained no evidence regarding the relevant statistical comparison)). And "[t]he strands of case law discussing the need for statistical evidence do not actually conflict with cases noting that § 12112(b)(6)'s language permits claims screening out 'an individual' with a disability." *Leskovisek by next friend Stanley v. Ill. Dep't of Transp.*, 506 F.Supp.3d 553, 568-69 (C.D. Ill. 2020).

Further, Plaintiff's brief discusses the alleged impact "on people with disabilities" but ignores whether such individuals are "qualified individuals" under 42 U.S.C. § 12111(8). As the Court (Schmehl, J.) recently explained, "actionable disparate impact requires analysis of whether the individual is otherwise qualified and whether reasonable accommodations may provide meaningful access." *Oross* Op. (Doc. 69), at 48 (quoting *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1197 (10th Cir. 2008), cert. denied, 555 U.S. 938 (2008) (citing *Alexander v. Choate*, 469 U.S. 287, 299-301 (1985)). *See also Alexander*, 469 U.S. at 299 ("just as there is reason to question whether Congress intended § 504 to reach only intentional discrimination, there is similarly reason to question whether Congress intended § 504 to embrace all claims of disparate-impact discrimination.").

Only one of the above absences of evidence – concerning causation/statistical evidence and whether the affected individuals were otherwise qualified – would be sufficient to defeat Gardner's Count V. Because she has failed to prove both elements, the University is entitled to judgment as a matter of law on the disparate impact claim, on either ground.

## III.     CONCLUSION

For all the foregoing reasons, Defendants Kutztown University, President Hawkinson, Mr. Peña, and Ms. Weidman respectfully request that their cross-Motion for Summary Judgment be granted and that judgment as a matter of law be entered in their favor on all counts of Plaintiff Gardner's Complaint. In the alternative, Plaintiff's Motion for Partial Summary Judgment should be denied in its entirety.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: August 11, 2023

OFFICE OF ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2136
Fax:    (717) 772-4526
mskolnik@attorneygeneral.gov
kbradford@attorneygeneral.gov

By:     */s/ Matthew Skolnik*
Matthew Skolnik
Senior Deputy Attorney General
Attorney ID No. 89423

Kevin Bradford
Senior Deputy Attorney General

Karen M. Romano
Chief Deputy Attorney General
Civil Litigation Section

*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I, Matthew Skolnik, hereby certify that the foregoing Defendants' Cross-Motion for

Summary Judgment and all supporting papers have been filed electronically on this date and are

available for viewing and downloading from the Court's Electronic Case Filing system by all

counsel of record.


Date: August 11, 2023                    By:    */s/ Matthew Skolnik*

Matthew Skolnik
Senior Deputy Attorney General