IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN OROSS, III | : | |
| | : | |
|     Plaintiff | : | CIVIL ACTION |
| | : | NO. 21-5032 |
| v. | : | |
| | : | |
| KUTZTOWN UNIVERSITY *et al.* | : | |
| | : | |
|     Defendants | : | |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLYN GARDNER, III | : | |
| | : | |
|     Plaintiff | : | CIVIL ACTION |
| | : | NO. 22-1034 |
| v. | : | |
| | : | |
| KUTZTOWN UNIVERSITY *et al.* | : | |
| | : | |
|     Defendants | : | |

**DECLARATION OF MARC E. WEINSTEIN**

COMES NOW the undersigned, Marc E. Weinstein who, after being duly sworn deposes and states as follows:

1. My name is Marc E. Weinstein. I present this Declaration in connection with Plaintiff Stephen Oross' and Carolyn Gardner's respective petitions for attorneys' fees.

2. I earned a Bachelor of Arts degree in public policy studies from Duke University in 1991 and a Juris Doctor degree from the University of Pittsburgh in 1996.

3. I currently maintain a private law practice named Weinstein Law Firm, LLC, with our main office in Fort Washington, PA. We have satellite offices in other parts of Eastern Pennsylvania. We employ a part-time associate and a part-time paralegal.

4. My practice is devoted to plaintiffs' civil rights litigation and representing plaintiffs in employment discrimination matters. I have spent all of my career in private practice (more than 25 years) devoted to vindicating employee rights and civil rights.

5. Prior to establishing my law firm in 2002, I was associated with a small firm in Bucks County beginning in 1999 wherein my caseload was devoted predominantly to plaintiffs' employment discrimination.

6. Prior to being an associate with that firm, I worked for the Pennsylvania House of Representatives for two years after law school.

7. I am admitted to practice in the Eastern District of Pennsylvania, the Middle District of Pennsylvania, and the Second (inactive) and Third Circuit Courts of Appeals. I have been admitted *pro hac vice* in the Northern District of New York, the Northern District of Illinois, and the Western District of Texas.

8. I counsel hundreds of employees every year and represent them, as necessary, in litigation or administrative proceedings.

9. In 2003, the Pennsylvania Supreme Court rendered a unanimous decision in case I briefed and argued. The case was *Sharpe v. St. Luke's Hospital*, 573 Pa. 90, 821

A.2d 1215 (2003), and the Court reversed decades of precedent and imposed a duty of reasonable care on companies conducting employee drug tests.

10. I am a member of the National Employment Lawyers Association (local and national chapters), and was formerly a member of the Bucks County NAACP Legal Redress Committee. I served several years on the Board of Editors for the *Employment Law Strategist* (ALM national publication) and had several articles published in the *Legal Intelligencer* pertaining to employment litigation from the plaintiffs' perspective.

11. In 2006, I tried a Title VII case before the Honorable Timothy J. Savage. I tried the case alone. The jury rendered a verdict in favor of my client in *Brown v. U.S. Postal Service*, Civil Action No. 05-1197, in the amount of $500,000 in compensatory damages (back pay, front pay and/or reinstatement and statutory attorneys' fees were to be decided in post-trial proceedings and the case thereafter settled).

12. In 2007, I tried a sexual harassment case with Ralph E. Lamar before the Honorable Eduardo C. Robreno. The trial lasted two weeks, and then the jury rendered a verdict for our client in *Lynne v. Worcester Township and Charles Sardo*, Civil Action No. 06-1136, in the amount of $110,085 in compensatory damages (back pay, front pay and/or reinstatement and statutory attorneys' fees were to be decided in post-trial proceedings and the case thereafter settled).

13. In 2010, I tried another Title VII case with Ralph E. Lamar before the Honorable Thomas J. McAvoy in the Northern District of New York. The trial lasted one week, and then the jury rendered a verdict for our client in *Faul v. Potter*, Civil

Action No. 06-1169, in the amount of $25,000 in compensatory damages (back pay, front pay and/or reinstatement and statutory attorneys' fees were to be decided in post-trial proceedings). The case thereafter settled in 2011 for approximately $110,000 in back pay, reinstatement to full-time position, $25,000 in compensatory damages, approximately $2,700 in prejudgment interest, reimbursement of hundreds of hours of lost sick and vacation pay, reimbursement of lost retirement contributions, and approximately $175,000 in attorneys' fees.

14. In September 2013, I tried another Title VII case with Ralph E. Lamar before the Honorable L. Felipe Restrepo. The trial lasted one week, and then the jury rendered a verdict for our client in *Pamela Murray v. County of Montgomery*, Civil Action No. 11-0107, in the amount of $750,000. Defendant was ordered to reinstate her to her job shortly after trial. Back pay and attorneys' fees were resolved as part of the post-trial settlement reached.

15. In December 2018, I tried an age discrimination case with Ralph E. Lamar before the Honorable Harvey Bartle III. The jury rendered a verdict for our client in *Dennis Caglia v. County of Montgomery*, Civil Action No. 17-5166. The jury also determined Defendant's conduct was willful, and assessed compensatory damages to be in the amount of $160,000. Plaintiff was reinstated to his position shortly after trial. Back pay, liquidated damages and attorneys' fees were resolved as part of the post-trial settlement reached.

16. Over the past 20 years Mr. Lamar and I have regularly consulted with each other about our respective cases.

17. Due to the nature of these civil rights claims (at which summary judgment is always sought), they are often defended with more vigor and effort than personal injury cases. Frequently attorneys must expend significant sums to pursue a case and may not see any fees, *if at all*, until completion, which can be anywhere from six months to several years. Plaintiffs' employment attorneys, including both me and Mr. Lamar, have devoted thousands of hours to employment discrimination cases and have been paid absolutely nothing. It happens.

18. Accordingly, attorneys who represent individuals in civil rights cases - in particular employment discrimination cases - rightfully command a higher hourly rate than in many other areas of practice. This relatively higher rate reflects the time, difficulty, complexity and inordinate risk involved.

19. I currently charge such civil rights clients $735 an hour. But, based upon the nature of these claims and the fact that most of my clients are unemployed and/or without any assets to fund litigation, I must accept many of these cases on a contingency basis, advancing much of the costs and expenses of litigation. In those types of cases I do not earn a fee if there is no recovery for my client. In some instances I may accept a case on a partial contingency, wherein my clients will pay a substantially reduced hourly rate ($50 -125 per hour, usually). In those cases I earn only a fraction of my $735 hourly fee if there is no recovery for my client.

20. As noted above, representing plaintiffs in employment law cases entails a substantial amount of risk. Attorneys can devote hundreds of hours to a case and earn zero. This reality explains why there are so few attorneys willing to represent plaintiffs in these kinds of cases, and why the federal courts must engage in special efforts to secure counsel for plaintiffs in these kinds of cases.

21. It is my belief and opinion that considering the scarcity of skilled plaintiffs' attorneys who are willing to take cases of these types, and the astounding risk of loss and the unusual vigor with which these cases are defended, that $735 is a reasonable hourly rate in these cases for an attorney of my experience, skill and reputation and represents the actual market rate for an attorney of comparable skills, reputation and experience. I also base this belief and opinion on other affidavits of counsel who have submitted them to the district courts within Third Circuit. This kind of hourly fee is what the market commands.

22. Having been colleagues for nearly 20 years I am very familiar with Ralph E. Lamar's skills, reputation and experience. His credentials, including his trial experiences in 5 different states, are unique. While he was a respected member of the plaintiff's employment law bar in the Eastern District of Pennsylvania he moved to Denver, Colorado in 2010 and established a plaintiffs' employment law practice there. He quickly became a respected practitioner in the District of Colorado.

23. Mr. Lamar's permanent move back to Pennsylvania in 2021 was welcomed by the local group of plaintiff's employment practitioners. His advice is relied upon,

heavily, by plaintiffs' attorneys in the Philadelphia region, as is evidenced by his contributions to our local chapter of the National Employment Lawyers Association ("NELA").

24. In connection with this petition I reviewed the following documents: the complaint, the answer, the Court's opinion issuing a temporary restraining order, the court's opinion granting plaintiff's motion for summary judgment, in part, the final judgment, Ralph E. Lamar's updated current CV, and Lorrie McKinley's updated current CV.

25. I am familiar with the Philadelphia CLS publication of hourly rates for lawyers who handle contingency fee cases.

26. In short, Attorney Lamar's skills are truly extraordinary, and he can command some of the highest of hourly fees in the Philadelphia market for these cases.

27. Considering that Attorney Lamar has been practicing for nearly 35 years, and has prosecuted hundreds of complicated civil rights claims, he can easily command the highest of hourly fees in the Philadelphia market for these cases.

28. Given all these factors, it is my firm belief that a $825 hourly fee for Attorney Lamar is both reasonable as compared to other lawyers with similar skills and experience in the local legal community of lawyers who handle such cases, and also is within the present, inflation-adjusted billing range as established by the Community Legal Services study for lawyers of his experience.

29. I am familiar with Ms. McKinley through our mutual involvement in the local chapter of NELA, and news reports of her cases. I have also reviewed her CV in connection with this fee affidavit. In the ADAAA plaintiffs' attorneys legal community she is regarded as one of the top lawyers in Pennsylvania, and I have sought her out myself for legal guidance in my own cases.

30. Given all these factors, it is my firm belief that a $850 hourly fee for Attorney McKinley is both reasonable as compared to other lawyers with similar skills and experience in the local legal community of lawyers who handle such cases, and also is within the present, inflation-adjusted billing range as established by the Community Legal Services study for lawyers of her experience.

31. Having reviewed the relevant pleadings and the Court's opinions in this case in which a temporary restraining order was issued, and then subsequently summary judgment was granted to the respective plaintiffs (on the most important claims) as well as the final judgments in both cases it is my opinion that this was an extraordinarily favorable result, fully meriting the hourly rate sought by Ms. McKinley and Mr. Lamar.

32. My statement as to the prevailing market rate for Mr. Lamar's and Ms. McKinley's services is based on the many years I have immersed myself in employment law issues, practiced in this field, and interacted with other attorneys in this field.

33. With regard to billing practices, because of the financial dynamics of representing plaintiffs in employment cases, plaintiffs' employment lawyers have a strong incentive to be especially judicious in expending time on particular tasks.

34. By necessity, plaintiffs' employment lawyers must be as efficient as possible in completing tasks and only advance claims, defenses or legal positions that they believe to be necessary. There is no luxury of spending more time than is necessary. The risk is too great. Plaintiffs' employment lawyers who do this will not be in business too long. We must conserve resources, and our time is the most valuable resource we have.

Pursuant to 28 U.S.C. § 1746(2) I hereby declare under penalty of perjury that the foregoing statement is true and correct.

This ___ day of January 2025

By: _____
Marc E. Weinstein, Esq.
WEINSTEIN LAW FIRM, LLC
500 Office Center Drive
Suite 400
267.513.1942 tel
marc@meweinsteinlaw.com
PA Atty. No. 79474