**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**STEPHEN OROSS, III**
Plaintiff

CIVIL ACTION

NO. 21-5032

v.

**KUTZTOWN UNIVERSITY, *et al.***

---

**CAROLYN GARDNER**
Plaintiff

CIVIL ACTION

NO. 22-1034

v.

**KUTZTOWN UNIVERSITY, *et al.***

**DECLARATION OF BRIAN J. FOLEY IN SUPPORT OF PLAINTIFFS' MOTIONS FOR ATTORNEYS' FEES AND COSTS IN TWO CASES AGAINST KUTZTOWN UNIVERSITY, *et al.***

I, Brian J. Foley hereby state that the following facts are true and correct to the best of my knowledge, information and belief:

1. I make this declaration on my own personal knowledge, and I will testify hereto if called as a witness.

2. After graduating from Dartmouth College in 1987 and the University of Californian Berkeley, School of Law (Berkeley Law) in 1993, where *inter alia* I won the Prosser Prize in Torts and served as an Associate Editor of the *California Law Review*, I clerked for the Honorable Edmund V. Ludwig on the United States District Court for the Eastern District of Pennsylvania. I was admitted to the Pennsylvania Bar in 1993, and the Bar for the Eastern

District of Pennsylvania in 1994. I have also been admitted to the Bar for the Middle District of Pennsylvania (2020).

3. From 1994 to 1997, I was active in the private practice of law in Philadelphia, Pennsylvania. I was an associate at Dechert Price & Rhoads from 1994-1996 and an associate at Connolly Epstein Chicco Foxman & Ewing from 1996-1997.

4. Subsequently, I engaged in full time law teaching, including appointments at Rutgers University School of Law – Camden, Widener University School of Law, Florida Coastal School of Law (tenured, full professor 2011-2014), Boston University School of Law, and Drexel University School of Law, where I co-won the teaching award at Drexel Law's inaugural graduation, selected for this honor by the first-ever graduating class a year after I had already left my one-year visiting professor appointment and was teaching at BU Law.

5. I have taught numerous courses and still teach part time as a Lecturer at Rutgers Law (most recently: Evidence (Fall 2024), Employment Law (Fall 2023, 2022, 2021)). Courses taught include Business Associations, Civil Procedure, Criminal Law, Criminal Procedure, Criminal Sentencing, Employment Law, Evidence, Federal Courts, Professional Responsibility, Property. I have taught "skills courses," including Legal Research and Writing (Legal Methods), Advanced Brief Writing, and ADR. During my time at Florida Coastal, Drexel, and Boston University, I worked *pro bono* for the Defender Association of Philadelphia (appeals unit).

6. I left fulltime teaching in 2014 to accept a generous buyout of my tenured full professor position at Florida Coastal School of Law (which was failing economically) to return to Philadelphia to live full time with my wife, a full professor of philosophy at Drexel University – for whom I just last week won a jury trial where the jury found that Drexel's violation of the

Equal Pay Law was "willful" and the Court awarded damages of more than $350,000 in back pay.

7. After returning to Philadelphia in 2014, I continued my volunteer *pro bono* work with the Defender Association of Philadelphia appeals unit, where I briefed and/or argued appeals.

8. I started my own solo law practice in late 2015 and have focused on employment law (plaintiff's side), and defamation. In 2018, I accepted an offer to serve part time as Acting Chief of Appeals at the Montgomery County (PA) Public Defender, after the longtime chief quit unexpectedly. I wrote federal appellate briefs for attorneys such as Caroline Cinquanto, Esquire.

9. Since starting my own practice, I have gained broad experience in the preparation, trial, and management of employment cases and other civil litigation. My litigation experience includes representing plaintiffs and defendants in employment and defamation cases. I am the lead counsel for the plaintiff in *Marilyn Gaye Piety Foley v. Drexel University*, 2022-CV-1777 (EDPA), and as set forth above won a jury trial last week serving as the sole plaintiff's attorney at trial. Among other things, I have succeeded in having two Philadelphia City employees reinstated to their positions via Philadelphia Civil Service Commission hearings and appeals (by the City): *City of Philadelphia v. Civil Service Commission (Lomax),* Philadelphia CCP, September Term 2017 No. 03173, and *City of Philadelphia v. Civil Service Commission (Sylvester)*, Philadelphia CCP, March Term 2021, No. 2875. *Lomax* included the added hurdle of proving that a resignation was a forced resignation. I represented another City employee to settlement of two related separate federal and state cases dealing with disability discrimination, FMLA, and defamation, *Diorio v City of Philadelphia, et. al.*, 2020-CV-6211(EDPA) and *Dioro*

*v. Pasquariello, et al.* June Term 2019 No. 6346 (Phila. CCP). (*Diorio* included the Rehabilitation Act, as in these instant cases.) I represented an employee and achieved a settlement including permanent ADA accommodation in *Bank v. Community College of Philadelphia*, 2022-CV-0293 (EDPA), and achieved settlement for a single client in two separate federal cases, a sex and race discrimination case, *Lewis v. Overbrook School for the Blind, et al.*, 2021-CV-3019 (EDPA) and a case dealing with, *inter alia,* religious and disability discrimination, *Lewis v. Overbrook School for the Blind, et al.* 2023-CV-1634 (EDPA). I second-chaired and conducted cross and direct examination in a two-plus week whistleblower trial in New Jersey state court with Richard Yaskin, Esquire, in 2019, *Narvaez v. State of New Jersey Judiciary, Vicinage 4, and John Doe(s) Nos. 1-15*, MER-L-1717-15 (NJ Sup. Ct.).

10. For university and college professors, I have provided extensive consultation and representation leading to settlements at the EEOC/PHRC level.

11. I was elected and currently serve on the Board of the local chapter (Eastern Pennsylvania) of the National Employment Lawyers Association (NELA), whose members practice employment law with a membership requirement that most of their work is for plaintiff workers.

12. As a full-time law professor, among other things, I co-created the Applied Legal Storytelling conference series, which addresses, inter alia, the use of story/narrative in litigation; the biennial series began in 2007 and continues to this day. I co-wrote the oft-cited and oft-reprinted *Fiction 101: A Primer for Lawyers on How to Use Fiction Writing Techniques to Write Persuasive Facts Sections*, 32 RUTGERS L.J. 459 (2001) *available at:* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=931451.

13. Upon invitation and/or selection, I have made presentations in a number of professional education programs, including the following:

- 2024 Annual Convention, Forging the Future of Workers' Rights, taking place June 26-29, 2024, at the Marriott Philadelphia Downtown in Philadelphia, PA: *Creative & Effective Storytelling for Workers' Rights Advocates* (with Mariyam Hussain, Esquire, and Laura Mattiacci, Esquire
    - reprised by NELA by popular demand live on Zoom, October 8, 2024
- *The Funny Relationship Between Law and Standup Comedy - What Lawyers Can Learn*, Philadelphia, PA November 2019
- *Storytelling for Lawyers*, Rutgers Law School, November 16, 2016 (I created this CLE)
- *The Rule of Law Today: The War on Terror; Immigration Reform*, Pennsylvania Bar Institute Law Forum, Philadelphia, PA, April 3, 2008. I presented on questioning the necessity of the sweeping legal changes after 9/11, including Guantanamo.
- *The Art of Persuasion*, Widener University School of Law, Wilmington, Delaware, September 29, 2001 (I created this CLE)
- *Storytelling for Lawyers: How to Use the Most Powerful Tool of Persuasion to Win Your Cases,* Philadelphia, Pennsylvania, April 27, 2001 (co-presenter) (I co-created this CLE)
- *Facts from Fiction: Using Fiction Writing Techniques in Writing Facts*

*Sections,* Widener University School of Law, Wilmington, Delaware, October 14, 2000 (I co-created this CLE)

- *How to Write Winning Briefs,* New Jersey Institute for Continuing Legal Education, Mount Laurel, New Jersey, November 13, 1999 (co-presenter) (I co-created this CLE)
- *Practical Brief Writing Skills,* New Jersey Institute for Continuing Legal Education, New Brunswick, New Jersey, March 6, 1999 (co-presenter) (I co-created this CLE)

14. I have also presented about employment law to lay people since I started my practice, in my course *Know Your Rights at Work,* which I designed and taught as an instructor and then Board Member of the Mt. Airy Learning Tree in Philadelphia, a community center that provides educational and recreational activities for adults and children in Northwest Philadelphia and beyond.

15. I have also taken numerous training programs including the extensive NITA Trial Boot Camp (2007) and NITA deposition training (2024).

16. The practice of employment law is full of pitfalls for the practitioner who is not both skillful and diligent.

17. Understandings of the law by employers are also evolving, especially since the many unprecedented changes in practice by employers since the Covid-19 pandemic; such a change in practice occurred in these cases brought by professors represented by Attorney McKinley against Kutztown University, *et al.,* where the Defendants blatantly refused to grant necessary accommodations to employees, including letting a professor who is alive only because

he had to have another person's heart transplanted into his body and accordingly suffers from a compromised immune system continue to teach his students via Zoom.

18. Representing plaintiffs to address discrimination requires that the attorney accept serious risks. One is an adverse change in the law. Just three years ago, for instance, during the pendency of these cases, the Supreme Court decided *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022), which appeared to limit damages for emotional distress under the Rehabilitation Act, which was *applicable in these two cases.* Such a change appeared to reduce drastically any recovery the Plaintiffs in the instant cases could receive, *making the need for statutory attorney fees all the greater.* This change also required Attorney McKinley, as it would require any diligent attorney, to conduct unexpected legal research and reevaluate the case for motion practice, trial, and settlement.

19. In employment law cases, most if not all the witnesses and other evidence are under the defendant employer's control, and many employers and their counsel play "hard ball" in discovery and may even cross ethical lines and not produce evidence even after repeated efforts by plaintiffs.

20. Plaintiffs' counsel in the instant cases faced an additional hurdle: that many courts and jurors may well believe that the Defendants' intentionally violating anti-discrimination laws was "necessary" to bring about the long-anticipated "return to normal" as quickly as possible during the Covid-19 pandemic, a time when public officials, employers, universities, government and private entities, commercial and public media, celebrities, athletes, commercial sports leagues and sports broadcasts, etc. repeatedly stressed that the return to normal was critical and that the advent of Covid-19 vaccines made such return possible as there would be no more

danger after most people were vaccinated. Therefore, there was a risk that jurors may have been tempted to *not* follow the law as instructed and give Defendants a pass for violating it by not accommodating these two Plaintiffs. In addition, in these instant cases, Plaintiffs and their counsel faced the risk that, by the time these cases reached trial, and panic over Covid-19 had died down and the virus became less dangerous, jurors would forget that many people such as Plaintiffs remain at severe risk from a Covid-19 infection; jurors might regard the Plaintiffs as over-reacting and that their requests for necessary accommodations was over-reaching, and reflexively take the school's side, resulting in no recovery for plaintiffs and no fee for the attorneys.

21. In addition, employment lawyers who take on cases representing tenured faculty who are, during the lawsuit, employed by Defendant face the additional hurdle that the professor cannot take a buyout that would be "normal" in a "regular" employment case (single-digit number of years of salary), because tenured professors, especially in today's job market where colleges and universities face shrinking enrollments, shrinking budgets, and are trying to shed faculty rather than hire them, *have no place else to go*. These days, schools rarely hire new tenured and/or tenure line faculty, especially seasoned faculty as in the instant cases. At the same time, these schools do not want faculty who sue them to stay on board. The result is that achieving settlement is difficult, because "stay packages" are rarely offered, and "go packages" rarely provide sufficient compensation for a professor to give up his or her career and livelihood, a career that, otherwise, could continue into the professor's 80s, as university teaching takes little physical effort. *For these reasons and many others, many seasoned employment lawyers are reluctant to represent tenured professors.* And, finally, damages for current employees are bound

to be lower than for an employee who still works for defendant than for an employee who was fired, because any damages are for emotional distress (or in rare cases, punitive damages), not for back pay or front pay.

22. I have known Lorrie McKinley, Esquire both personally and professionally for approximately three and one half years. In fact, I came and came to know her through the KU cases by way of a number of referrals. I do not know Ralph Lamar, which is why my Declaration is limited to the fee request by Ms. McKinley.

23. Attorney McKinley and I served as co-counsel in a case brought by another Kutztown professor that ended in settlement. *Rhoads v. Kutztown University*, 22-CV-5002 (EDPA). This was originally my case, but I asked Attorney McKinley to take the lead. I knew about her work in the other two cases. Within a short time I was confident that she would help obtain the best possible result, and that I would gain great advantage in increasing my own skills and knowledge by working with her.

24. Since then I have worked and consulted with Ms. McKinley on other cases. Because of her stellar abilities, knowledge, empathy, skills, courage, character, and utter brilliance, I fully retained her and insisted on paying her to represent me in the case where I last week won a jury trial, *Marilyn Gaye Piety Foley v. Drexel University*, 2022-CV-1777 (EDPA), when Drexel filed a motion to disqualify me based on the fact I am married to the plaintiff. Attorney McKinley's represented me during my deposition by Drexel's counsel. Her work with me preparing for deposition and briefing against Drexel's multiple motions and objections was stellar. She also worked with me in connection with other briefings in the case, and her help was amazing. We defeated the disqualification motion, and my client was able to continue her case

and achieve justice.

25. In preparing me to have my deposition taken, Attorney McKinley upheld the highest standards of honesty, integrity, legal ethics, and high principle. Her preparation helped me in what was a stressful, high-stakes situation that, under the unique circumstances of the case, could have resulted in my not being able to continue representing my own wife in her case against her current employer, Drexel University. My wife was and is still a current employee of Drexel, a tenured full professor. So, finding another attorney to represent her and take on the risks described above (including that Drexel's lawyers employed time-consuming hard ball tactics throughout) would have been almost impossible, and I was aware that Attorney McKinley would not be able to do so as she was utterly mired in these two instant cases as a result of the Kutztown Defendants' own litigation strategy and tactics. (These cases obviously have limited Attorney McKinley's ability to take on other cases.)

26. Working with Attorney McKinley on *Rhoads v. Kutztown* was illuminating and intense and enjoyable. Although I am experienced and have taught many different law courses including skills courses, I observed and learned from and was massively impressed by Attorney McKinley's diligence, brilliance, attention both to broad strategy and granular detail, and her efficient work and devoted work ethic. I worked with her to conduct research and briefing regarding the application of *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022), which appeared on its face to limit damages for emotional distress under the Rehabilitation Act. Ms. McKinley was one of the only attorneys in the country who was willing to challenge the application of the Court's decision to employment claims, when the fundamental mission of the Rehabilitation Act has always been to open opportunities to

employment. Among other things, the Court's opinion never mentioned the words "employment," "work," or "job." We worked long and hard to craft a well-researched and serious analytical challenge to the application of *Cummings* to the *Rhoads* case, and we achieved a settlement.

27. During the course of the proceedings in the *Gardner* case, I reviewed a number of Ms. McKinley's briefings and provided editorial consultation. Attorney McKinley's work was excellent, both substantively and stylistically. I recall wishing that I had had these when I was teaching legal writing at law schools and in the CLE programs I taught about legal writing, reasoning, and persuasion to use as examples for students and practicing lawyers.

28. During the pendency of these cases, I reviewed some of the deposition transcripts, and I was impressed with Attorney McKinley's abilities in questioning hostile witnesses. I was also impressed, negatively, by some of the obstructive and obstinate conduct of witnesses such as Kutztown's President. These Defendants refused to face the reality that the TRO showed strongly that they would lose in Court if they tried to argue that their policy/conduct was legal.

29. In preparation for my Declaration here, I also reviewed the Declaration of Ms. McKinley, her successful TRO briefing, materials regarding her successful offensive motion for summary judgment and her successful motion for reconsideration, and it is my professional opinion that all this work was excellent and necessary to move this Court to require Defendants to comply with the law and stop discriminating needlessly against two disabled faculty members. I add that successfully moving any court to reconsider a decision and change its ruling is in and of itself an important professional achievement. Attorney McKinley has evidenced the highest principles of law practice and advocacy for people with disabilities, and such principle obviously

fueled her devoted and 100% effective work for these two clients. Since then, I have been "stealing" many of her practices as my own. And her principles and principled approach serve as inspiration and encouragement to me.

30. Attorney McKinley is held in the highest esteem by others in the Philadelphia legal community for her professional skills and personal commitment. That esteem is demonstrated by the honors she has earned and by her selection to present many CLE programs for fellow lawyers. I am always proud to tell people that I work with her, and the reaction I get is always one of admiration for her.

31. Ms. McKinley has devoted almost all her legal career to the practice of disability and/or employment law. Thus, her experience litigating cases similar to this one gives her far greater expertise than most other attorneys with the same number of years of practice.

32. In practice and service as an arbitrator, I have become familiar with the skills and market rates for attorneys who engage in employment discrimination and other civil rights litigation in Philadelphia.

33. I know that the CLS Fee schedule sets the hourly rate for attorneys with more than 25 years of experience between $735 and $850. It is my firm opinion that Ms. McKinley deserves to be compensated at least at the highest rate within that range.

34. In my opinion the hourly rate Ms. McKinley is requesting is entirely fair and reasonable. It is below the rate of many attorneys in the region, especially those who practice on the employer-side of employment discrimination law, including attorneys who are less skilled, less diligent, less effective, less ethical, and less principled. *It is irrefutable that Attorney McKinley is at the top of her game at the top of the pile and deserves to be compensated as such.*

34. Finally, the results in these cases represent a high degree of success, and the time Attorney McKinley invested shows such efficiency and effectiveness that the work would justify a significantly higher fee.

I declare under penalty of perjury pursuant to and subject to the penalties of 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

*/s/ Brian J. Foley*
**BRIAN J. FOLEY**
Brian J. Foley, Esquire

Executed on: February 4, 2025